JESSE (a slave) *v.* THE STATE OF MISSISSIPPI.

Where a slave is indicted under the statute (Hutch. Co. 521, § 55) which provides that, " if any slave be guilty of burning any dwelling-house, store, cotton-house, gin or outhouse, barn or stable, or shall be accessory thereto, every such slave shall, on conviction, suffer death:" *Held*, that an indictment is essentially defective in such a case, unless it avers that the act of burning was committed maliciously, and must be quashed.

Malice is of the essence of the crime of arson at common law, and the same ingredient must enter into offences of house burning created by statute.

The words used in the statute do not, in view of the nature of the offence and the recognized principles of law, describe the offence so as to convey to the mind a full and clear idea of every thing necessary to constitute the crime in such case ; consequently the full measure of the offence must be charged, by the use of such words as are necessary and proper under established rules of law, to characterize it.

The rule is settled that every error in substance in charging the offence, which would have been fatal to the indictment on general demurrer, or motion in arrest of judgment, may be urged in error, and is ground for a reversal. *Kirk* v. *The State*, 13 S. & M. 407.

*Loper* v. *The State*, 3 How. 429, and *Brantley* v. *The State*, 13 S. & M. 468, cited and explained by the court, and confirmed.

IN error from the circuit court of Carroll county ; Hon. Wm. L. Harris, judge.

The facts of the case are sufficiently set forth in the opinion of the court and the brief of appellant's counsel, where also will be the instructions of the court below.

*J. Y. George*, for appellant.

The indictment is fatally defective, because it does not charge, either directly or by necessary implication, that the burning was malicious.

As a preliminary question to this it is necessary to determine, whether upon the one hand the statute upon which these proceedings are based, (Hutch. Code, 521, § 55,) creates a distinct statutory offence, prescribing a definition of all the facts which constitute the crime ; or whether, upon the other hand, the statute merely refers to a common law offence by its popular name

and provides a penalty for its commission; or whether it defines the offence by terms constituting a legal conclusion, instead of prescribing a definition of the facts which in law constitute the crime.

If either of the last two hypotheses be true, then the indictment should be drawn as at common law; if the first be correct, then it should follow, substantially, the words of the statute. Wharton's Crim. Law, 134.

I insist that the statute cannot, with any propriety, be construed to create an offence, containing a definition of all the facts which constitute it. There are eleven distinct offences mentioned in the section of the statute under consideration, for the commission of either of which by a slave, the penalty is death. It is manifest that the legislature did not intend in the section under consideration, to define the facts constituting the offences therein mentioned. If such be the intention of the legislature, they were singularly unfortunate in making that a capital offence which may be done or committed, as a most innocent transaction, although attended by every fact or circumstance mentioned in the statute. For a slave may, by his master's direction and consent, burn his master's own barn, not situated where by any possibility any damage or loss could arise to any third person.

Again, if we look at the context, the intention to prescribe a punishment for crimes, instead of a definition of them, becomes more manifest. It will not, I presume, be contended that under the same section, a slave could be lawfully indicted, " that, &c., he attempted to commit any capital crime;" or, " that, &c., he was, voluntarily, accessory before the fact in a capital offence; " or, " that, &c., he was guilty of a capital crime; " or, " that, &c., he was guilty of any other crime made capital by law," without charging what particular crime and the facts necessary to constitute it. Yet if these phrases constitute a definition of the facts constituting the several offences, such indictment would be good.

Under such an indictment, a slave might be tried either for murder, arson in the first degree, or treason, without any notice which of these several offences were intended to be alleged

9*

Jesse (a slave) *v.* The State.

against him. And if he should be so fortunate as to be acquitted upon the charge selected for his trial by the district attorney, under the indictment, he might afterwards, under a similar one, be tried for the same offence without any possibility of pleading and proving by the record his former acquittal.

I conclude, then, that the statute does not furnish us with a definition of the facts constituting the crime for which defendant stands indicted, but that we must look to the common law for such definition, and for the rule by which the indictment must be framed.

Arson is the wilful and malicious burning of the house or out-house of another. Whart. C. L. 534; 4 Black. Com. 220. At common law it is necessary to aver that the offence (of burning) was committed wilfully and maliciously as well as feloniously. 2 East, P. C. 1033; 1 Hawk. P. C. 140; Whart. C. L. 537. In an indictment under the statute of 9 Geo. 1, it is necessary to aver that the burning was malicious, although the statute does not contain these words, for the malice is the essence of the offence. 2 East, P. C. 1033.

This indictment does not contain the word malicious, and is, therefore, fatally defective at common law, unless the above authorities are wrong, and unless it be unnecessary to aver in an indictment the fact which constitutes the essence of the crime, or that without which it is no crime at all; a position which is simply absurd. But if I should be mistaken in supposing that this indictment must be tried by the standard of the common law, instead of by the statute, I insist that it is defective in not containing the statutory definition.

" Where the words of the statute are descriptive of the offence, the indictment should follow the language of the statute." " It is necessary that the defendant should be brought within all the material words of the statute, and nothing can be taken by intendment." Whart. C. L. 132, 133. " It is a general rule, that all indictments upon statutes, especially the most penal, must state all the circumstances which constitute the definition of the offence in the act, so as to bring the defendant precisely within it. They must also pursue the precise and technical description of the offence. This rule was not followed in

this case. The most material word in the constitution of the offence is omitted." *Anthony* v. *The State*, 13 S. & M. 264.

If tried by this standard, the indictment is defective. The language of the statute is, " If any slave shall be guilty of burning any dwelling-house, barn, &c., he shall, on conviction, suffer death." The indictment avers that he wilfully and feloniously did burn, &c. It is only by a most strained construction that the definition of any offence can be ascertained from the language of the statute. If the court decides to resort to the language of the statute for a definition of the facts and circumstances which constitute the offence, I insist that the word guilty is of most material effect in ascertaining that the statutory definition is a crime at all.

The statute says, " if a slave shall be guilty," &c. The word guilty is in this connection all important, because it signifies, *ex vi termini*, a breach of a legal duty and a violation of law, and it is the only word in the statute which defines or denotes a criminal act, for, as before remarked, the remaining words of the statute define no act which may not be perfectly innocent. The word guilty does not serve merely as a kind of legal *vinculum* to connect the agent with the act done, it also connects him with every fact, material and moral, which is necessary in law to accompany the act, in order to constitute it a crime.

If a man be indicted for malicious homicide, the verdict of guilty not only establishes that he committed the homicide, but that he perpetrated it under such circumstances as in law constitute the crime of murder. So if one be indicted for a malicious burning, the verdict of guilty not only ascertains the fact of the burning, but also the legal malice, which renders it unlawful. The word guilty universally, in law, implies a violation of law, — a commission of an act, or omission of a duty, under circumstances which render the commission or omission unlawful. When it is said, " that the law is made for the protection of the innocent by a due punishment of the guilty," and that it is better that ninety-nine guilty persons should escape, than that one innocent should be punished, — the term " guilty " is not asserted of persons who do or have done acts which may or may not be unlawful according to circumstances, but of those

who actually do or have done acts attendant by such circumstances as render them illegal.

The burning of a barn is innocent or criminal, lawful or unlawful, according to the attendant circumstances. The legislature has failed to define these circumstances, except so far as they may be implied in the term "guilty." That term, then, must be used in the indictment, as *generalissimum nomen,* including within itself the legal definition of those facts which constitute the crime, or, discarding the general name, the pleader should have averred specially those facts which are implied in the term " guilty." This he has failed to do, and I confidently conclude that the indictment, whether tried by the statute or the common law, is fatally defective.

The next question is, whether the defendant having failed to demur, to move to quash, or in arrest of judgment in the court below, can take advantage in this court of the error complained of. This question is settled by a deed of adjudication of this court. The court say, " the only question as to this, was whether in a case in which the writ of error was sued out, to a refusal to grant a new trial, the objection could be taken in that stage of the proceeding." It would appear to have been thus taken in *Cady* v. *The State,* 3 How. 27. And as the statute of jeofails and amendments do not extend to criminal proceedings, it follows that every error which would have been fatal on demurrer or in arrest of judgment, will be sufficient to procure its reversal. 1 Chit. C. L. 7511; 13 S. & M. 406. In that case the error was that no prosecutor was marked on the indictment; in this, that there is no legal indictment at all.

The next error complained of is, the giving of the third instruction asked in behalf of the State, which is as follows : " A free and voluntary confession of guilt made by a prisoner, whether in the course of private conversation with private persons, or upon examination before a magistrate, is admissible in evidence as the highest and most satisfactory proof; because it is fairly to be presumed that no man would make such a confession against himself if the facts confessed were not true."

I object to this instruction on two grounds : 1st. That as a

legal proposition it is not true. 2d. That it is a charge upon the weight of testimony.

1. Notwithstanding the contrariety of opinion amongst foreign judges and text writers as to the weight due to confessions, it is no longer an open question in this State, if two direct adjudications of this court, holding the very reverse of the principle announced in the third instruction, be competent to settle it. See *Keithler* v. *The State*, 10 S. & M.; *Stringfellows* v. *The State*, 26 Miss. 157.

The evidence of verbal confessions of guilt is received with great caution. 1 Greenl. Ev. § 214.

" Of all kinds of evidence, that of extrajudicial and casual declarations is the weakest and most unsatisfactory ; such words are often spoken without serious intention, and they are always liable to be mistaken and misremembered, and their meaning is liable to be misrepresented and exaggerated." 1 Starkie on Ev. p. 549 et seq.

Judge Blackstone, speaking of confessions, says : " And even in cases of felony at common law, they are the weakest and most suspicious of all kinds of testimony ; ever liable to be obtained by artifice, false hopes, promises of favor, or menaces seldom remembered accurately or reported with due precision, and incapable from their nature of being disproved by negative evidence." 4 Blackstone, Com. 357.

The voluntary statement of a prisoner is of little· weight. *Keithler* v. *The State*, 10 S. & M.

This court, in Stringfellow's case, after reviewing the decisions and the text writers on this subject, come to a conclusion in conformity with the authorities cited above. The court say : " We believe that the doctrine which holds, that in capital felonies the prisoner's confessions, when the *corpus delicti* is not proved by independent testimony, is insufficient for his conviction, best accords with the solid principles of reason, and the caution which should be applied in the admission and estimate of this species of evidence."

Now if confessions, free and voluntary, are the highest and most satisfactory proof, it is a little singular that this court should discard that kind of evidence, being the highest and

most satisfactory, and require proof of the *corpus delicti*, by the lower and less satisfactory proof of the testimony of an eye-witness to the act of killing, or of a person who had seen the dead body. For if confessions are the highest and most satisfactory proof, all other evidence is less high and less satisfactory.

As there is no statute of frauds and perjuries in criminal cases, (unless the constitution, as to proof of treason, be one,) I infer that the court in deciding that the confessions of a prisoner are insufficient to prove the *corpus delicti*, did not act in obedience to a positive law, prohibiting that particular fact to be proved in that particular manner; but that they held that confessions, on account of their intrinsic weakness, are incapable of producing a satisfactory belief, that the fact is so, or in other words that they required higher and more satisfactory proof of the fact to be established.

We are not left entirely to inference as to the true position of the court in this respect, for they assign as a reason for their opinion, " the caution which should be applied in the admission and estimate of that species of evidence."

I shall dismiss this branch of the case with the single additional remark, that it would be a novel position in jurisprudence that the highest and most satisfactory proof is insufficient to establish a fact in a cause, on account of the caution to be applied in estimating its legal value.

2. The instruction is liable to objection on another ground, namely, it charges the jury on the weight of evidence.

" It is surely not competent for the court to charge the jury on the weight of evidence; this must be left to the jury to determine." " The weight of evidence, is the influence or effect which it has in establishing a fact, or in enabling the jury to draw a conclusion." *Perry* v. *Clark*, 5 How. 499.

If the jury be told by the court that certain evidence is the highest and most satisfactory proof of guilt, they are certainly charged as to influence or effect which the proof should have in establishing the fact of guilt; for if the proof be the highest and most satisfactory, it certainly has the greatest influence or effect in establishing the fact to be proved, or in enabling the jury to draw a conclusion.

Jesse (a slave) *v.* The State.

The second instruction given on behalf of the State is also error; it is as follows: "If the jury believe that the proof shows that the defendant burnt such a building as the one described in the first instruction, it will be your duty to convict him."

This assumes that the burning of the barn is *per se* a crime, whether it be done wilfully and maliciously, or accidentally. This, as a legal proposition, is monstrous, repugnant to the common ideas of justice of all mankind, whether civilized or barbarous, and utterly unfounded in any decision or dictum of any judge or justice, from the high dignitary who sits in the highest court in Christendom, to the contemptible retailer of judicial wares in the presiding genius of a *pri pondre* court.

The instruction is equally indefensible as modified by an instruction on the part of defendant, to the effect that the burning must be wilful. It must also be malicious. 4 Blackstone, 220; 2 East, P. C. 1033; Whart. C. L. 534.

The judgment should be reversed for another reason; there is no evidence in the record that the defendant is a slave. Under the indictment it was necessary to prove that the defendant was a slave, as charged. The slavery of defendant is one of the ingredients of the crime, and is that which makes it capital. The crime, as charged, consists of two facts, one the malicious burning, the other the slavery of defendant. If either fact do not exist, the defendant is not guilty. It then becomes the duty of the State to prove both facts. This, I presume, will not be controverted.

It may be insisted that the proof of color of defendant would raise a presumption of slavery, upon which the jury would be authorized to act, and that such proof may be made by witnesses testifying to the fact, or the personal inspection of the jury. Waiving, for the present, the fact that there is no proof in the record on this subject, I insist that the rule cannot be applied in this case.

That presumptions of slavery or freedom arise from color in civil cases, has been decided in this and other southern States. See *Fox* v. *Lamburn*, 3 Halst. 275; *Gentry* v. *McInnis*, 3 Dana, 382; *Hall* v. *Mullen*, 5 Harris & Johns. 190; *Hooke* v. *Page*,

Jesse (a slave) *v.* The State.

2 Munf. 379; *Gober* v. *Gober*, 2 Hayward, 170; *Burke* v. *Joe*, 6 Gill & Johns. 136; *Hudgins* v. *Wright*, 1 Hen. & Munf. 141; *Thornton* v. *Demoss*, 5 S. & M. 609.

I am not aware that this presumption has been extended in other States to criminal cases, it certainly has not in this.

The supreme court of Alabama has held other proof to be necessary in *The State* v. *Marshall*, 8 Ala. Rep. 302.

It would be a violation of well-settled legal principles, to extend this rule to criminal cases. The accused, as he stands, is presumed in law to be innocent, until his guilt is proved. No presumption of guilt can arise, except as a legal inference from certain acts, which the proof connects him with as the agent or author, — as the presumption of malice arising from the use of a deadly weapon, or the administration of poison, — or of intent, from the principle, that a party is presumed to intend the ordinary and natural consequences of his own act. In these cases it will be recollected that the presumption arises alone upon proof of such acts as the party commits either by himself or another, or is legally responsible for.

It is confidently submitted to the court, that no principle exists by which a presumption of guilt can arise from the proof of a fact, for which the defendant is in no way responsible, and, from the nature of things, cannot be.

*D. C. Glenn*, attorney-general, for the State.

1. Upon the objections to the indictment, I refer to decision in Sarah's case, Ms. Op.

2. I insist the objection comes too late here, not being made below. Loper's case, 4 How.; Brantley's case, 13 S. & M.

3. The charge No. 2, is qualified by all the law given to the jury.

4. The charge on confessions is upheld by the author in Wharton, Cr. Law, and cases cited at p. 252.

Mr. Justice HANDY delivered the opinion of the court.

This was an indictment in the circuit court of Carroll county, under the 55th section of the statute of 1822, Hutch. Dig. 521, concerning slaves, free negroes, and mulattoes. The indict-

ment charges that the plaintiff in error, " on the 5th day of June, 1854, with force and arms, in the county aforesaid, did then and there wilfully and feloniously set fire to and burn up and consume with said fire a certain barn situate in said county," &c., " contrary to the statute in such case made and provided," &c. The accused pleaded not guilty, and on the trial a verdict and judgment of conviction were rendered, from which the case is brought here.

The first and principal ground of error alleged is, that the indictment is essentially defective in not charging that the act of burning was committed maliciously, and, therefore, that no judgment can be pronounced upon or supported by it, and it must be quashed.

The offence charged is founded upon the statute above mentioned, which provides, that " if any slave shall be guilty of burning any dwelling-house, store, cotton-house, gin or out-house, barn or stable, or shall be accessory thereto, every such slave shall, on conviction, suffer death."

It is not denied on the part of the State, that malice is of the essence of the crime of arson at common law, and that the same ingredient must enter into offences of house-burning created by statute. But it is insisted that, in the latter class of cases, it is sufficient to charge the offence in the indictment by the terms used in the statute.

While this is true as a general rule, we apprehend that it only applies where the description of the offence in the statute, taking into consideration its nature and the natural and legal import of the terms used in designating it, is such as to convey a certain, clear, and full idea of the offence intended to be created, and to embrace every ingredient necessary to constitute it, though the words employed be not the same as would be required in indictments for similar offences at common law. In such a case, no prejudice can be done to the accused by following the words of the statute. But if the words used in the statute do not, in view of the nature of the offence and the recognized principles of law, describe the offence so as to convey to the mind a full and clear idea of every thing necessary to constitute the crime, in such case, the full measure of the

offence must be charged, by the use of such words as are necessary and proper, under established rules of law, to characterize it. The difference is simply that between offences which are fully and clearly defined in the statute, and such as are described generally. In the former, the description contained in the statute is sufficient; in the latter, the offence must be charged agreeably to the rules of the common law. It depends upon the nature of the offence and the terms in which it is described in the statute, whether the one or the other of these rules will apply to the particular case. Wharton's Crim. Law, 132, and cases there cited.

In the present case, it is manifest that the words used in the statute do not show any thing which, as described, it can be supposed the legislature intended to punish. No term is employed conveying the idea of malice or criminal intent; and yet it is obvious that it was not intended to punish the mere burning of the houses enumerated, without it should be done with a malicious intent. It is plain, therefore, that the legislature have not adverted to the full measure of the offence, and that it was not intended to do so, but to provide generally for its punishment, leaving the proper description of it to be supplied, according to the settled rules of law when persons should be charged under the statute. We are, therefore, of opinion, that the statute does not dispense with the averment of malice, and that the indictment, without such averment, showed no offence in law.

The next question is, whether the plaintiff in error, after having pleaded in bar to the indictment, and made no question as to its sufficiency in the court below, can avail himself of a fatal defect in it in this court, and have it quashed. This point was decided in *Kirk* v. *The State*, 13 S. & M. 407, and, we think, correctly. We think it well settled, that every error in substance, in charging the offence, which would have been fatal to the indictment on general demurrer or on motion in arrest of judgment, may be urged in error, and is ground for a reversal; for otherwise this court would be called on to pronounce judgment against a party who is not charged with any offence in law.

The cases of *Loper* v. *The State*, 3 How. 429, and *Brantley* v. *The State*, 13 S. & M. 468, are urged by the attorney-general as opposed to this view. But there is no conflict. The case of Loper holds that the accused may waive the right to a copy of the indictment and of the special venire secured to him by law, and the case of Brantley holds that exceptions to the organization of the grand-jury will not be entertained in this court after plea of not guilty and conviction in the court below; and the principle held in both the cases is, that the objections will be considered as waived, if not made in the court below. But these are questions pertaining rather to the regularity and formality of the proceeding, than to its substance and indispensable requisites. Here the error is radical, and fatal to the conviction. It is nothing less than a judgment of death against an individual for an offence which, as charged, is no crime in law; and if the judgment were affirmed, this court would have to pronounce judgment of death anew against him, when no crime is alleged against him. It appears to us, therefore, clear, that in cases like this, it is proper to examine the indictment, and though not questioned in the court below, if it appear to be fatally defective in substance, that it should be quashed here.

The judgment is, therefore, reversed, the indictment quashed, and the prisoner ordered to be kept in custody for a new indictment.