JOHN L. SULLIVAN *v.* THE STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Statutory offense. Indictment.*

    In an indictment for a purely statutory offense, where the language is so specific as to give notice of the act made unlawful and so exclusive as to prevent its application to other acts, it is sufficient to charge the offense by using only the words of the statute. But where the wording of the statute is broader than its purpose, and the prohibited act does not clearly appear, or where, under certain circumstances, one may lawfully do the thing forbidden, it is necessary to depart from the language used and indict in words aptly charging the offense. *Jesse v. The State*, 28 Miss. 100.

2. PRIZE-FIGHTING. *Must be for reward, and in public. Acts 1882, p. 142.*

    Under the statute (Acts 1882, p. 142), which in general terms makes it " unlawful for any person to engage in prize-fighting," without further designation or definition, it is not sufficient to indict by using the statutory words only. There must be a fight for a reward or wager, in a public place, or where the public, or a part of it, is admitted as spectators, and these facts must be charged.

3. SAME.   *To constitute offense, both parties must engage in fight.*
   Under this act, an indictment against one for " engaging" in a prize-fight
   is defective which charges merely that he entered a prize-ring and beat
   and bruised another, although under a *videlicet* which states that this was
   done in pursuance of a previous appointment to meet and engage in a
   prize-fight with such other. The offense can only exist where two per-
   sons engage in the unlawful act, and it must be alleged and shown that
   they contended against each other.

FROM the circuit court of the second district of Marion county.
HON. S. H. TERRAL, Judge.

The opinion states the case. As the judgment is reversed because
of the insufficiency of the indictment, it is unnecessary to set out
the facts. For the same reason, the arguments of counsel as to
many points presented by the record are omitted.

*Calhoon & Green,* for appellant.

1. The indictment is fatally defective. Manifestly it was drawn
from the Massachusetts decisions, 7 Gray, 324, and *Commonwealth*
v. *Bennett,* 108 Mass. 27. These decisions were based on a statute
defining the offense. But the statute in question merely forbids
prize-fighting, and nowhere gives any definition. Under such a
statute, it is well-settled that the offense must be charged by the
use of such words as are necessary to characterize it. *Jesse* v. *The
State,* 28 Miss. 100; *Harrington* v. *The State,* 54 Ib. 490; *Lewis*
v. *The State,* 49 Ib. 354. See, also, 13 S. & M. 263; 23 Miss.
535; 31 Ib. 473; 44 Ib. 317; 28 Ib. 367; 46 Ib. 284.

2. According to Webster, prize-fighting is fighting in *public,* for
a reward or wager. Worcester says it must be *for a reward.*
Under either definition, this indictment is defective.

At common law the offense here complained of did not exist.
That is, as to the principals, it was an affray. 4 Stephens's Com.,
276; Hawkins's P. C., 486; or riot, or assault and battery. *Rex* v.
*Perkins,* 4 Car. & P. 537 (19 Eng. C. L. 515); *Rex* v. *Billingham,*
Car. & P. 234.

If the fighting was by agreement, there could be no assault and
battery. 1 Bish. Cr. L., § 260, note.

The offense being undefined by the statute, the indictment must

aver by apt words an affray, riot, unlawful assembly, or assault and battery, in a *public* place.     2 Bish. Cr. L., § 536.

3. The substantial and essential requisite of fighting, beating, etc., is averred under a *videlicet,* which is equally fatal to the indictment. *Riggs* v. *The State*, 26 Miss. 51 ; *Norris* v. *The State*, 33 Ib. 373.

*S. S. Calhoon*, for appellant, made an oral argument.

*T. M. Miller*, attorney-general, for the state.

1. The indictment clearly informed the defendant of the nature and cause of the accusation against him.   " Certainty to a certain intent in general" is all that is required.   Prize-fighting is so well understood, that an indictment in the language of the statute, giving time and place, would have been sufficient.   But here the indictment goes further and avers that the persons met in a prize-ring, by previous appointment, to engage in a prize-fight, for a large sum of money, etc.   This so characterized the charge as to leave no ground for surprise, or to prevent the record from being used under a plea of former jeopardy.

2. If we agree with counsel, that a prize-fight is a boxing-match in public, the charge is ample, leaving it to the testimony to establish that it was in public.   If prize-fighting is boxing, etc., in public, as defined by Webster, then a prize-ring must be a place where fighting in public is done.   Consequently, the plain meaning of the indictment is that it charges a fighting in public.   It must have so advised the defendant.   But, according to Worcester, it is not necessary that the contest should be in public.

3. It is immaterial whether the parties fought for a wager or a reward.   A wager, that is the part lost, is a prize to the winner. The issue of the indictment is that the parties fought for a large sum of money.   What difference can it make from what *source* the prize comes ?   The indictment plainly charges that Sullivan fought Kilrain for this money ; the language imports nothing else.

If money wagered by the contestants cannot be regarded as a prize, that question would arise on the sufficiency of the evidence, and not on the indictment.

*T. M. Miller*, attorney-general, made an oral argument.

COOPER, J., delivered the opinion of the court.

The appellant has been convicted of the offence of prize-fighting in violation of an act entitled, " An act to prevent prize-fighting in this state and for other purposes," approved March 7, 1882.   The first section of the act declares that, " it shall be unlawful for any person to engage in prize-fighting in this state, and any person engaged in such prize-fighting shall be deemed guilty of a misdemeanor, etc."

The indictment contains two counts, the first for a violation of the above statute, and the second for an assault and battery.   Appellant was acquitted under the second count and convicted under the first.   The defendant pleaded in abatement, to the indictment, to which pleas demurrers were sustained, and after conviction he moved in arrest of judgment and for a new trial, and, both motions being denied, he prosecutes this appeal.   So much of the indictment as is brought into review is as follows :—

" The state of Mississippi, county of Marion.   In the circuit court for the second judicial district of Marion county, at the special August term, 1889.   The grand jurors of the state of Mississippi, upon their oaths, present that, John L. Sullivan, in the second judicial district of Marion county, Mississippi, on the 8th day of July, A.D. 1889, by and in pursuance of a previous appointment and arrangement, made to meet and engage in a prize-fight with another person, to wit : with Jake Kilrain, did then and there, and for a large sum of money, the exact amount of which is to the grand jurors aforesaid unknown, did then and there, to wit ; on the 8th day of July, 1889, in the second judicial district of Marion county, Mississippi, unlawfully engage in a prize-fight with the said Jake Kilrain, to wit ; did then and there enter a ring, commonly called a prize-ring, and did then and there in the said ring, beat, strike, and bruise the said Jake Kilrain ; against the peace and dignity of the state of Mississippi.

" JAS. H. NEVILLE, dist. atty."

This count is fatally defective as one charging the apppellant with the offence of prize-fighting.   The statute neither defines the offense

of prize-fighting nor declares what act done shall be a violation of the provisions. The specific offense was unknown to the common law, the participants in such act being only punishable for an affray, riot, or assault and battery according to the circumstances.

In indictments for purely statutory offenses it is sometimes sufficient to charge the offense by using only the words of the statute. This may be done where the language of the statute is so specific as to give notice of the act made unlawful, and so exclusive as to prevent its application to any other acts than those made unlawful. Our statute against retailing (code 1880, § 1097) is an apt illustration of statutes of this character. It declares that, " It shall not be lawful for any person to sell vinous or spirituous liquor in a less quantity than one gallon, without having first obtained a license in the manner directed by this act." Here the nature and character of the prohibited act is clearly set out, and there is an exclusion of its application as to the only class of persons, licensed dealers, who may sell in the quantity named without guilt.

But where the act prohibited does not clearly appear from the language employed, or where, under certain circumstances, one may lawfully do the thing forbidden by the literal meaning of the words of the statute, it is not sufficient to indict by the use only of the statutory words; under such circumstances, the indictment must charge in apt language the unlawful act, that the defendant may be advised of the nature and character of the offense with which he is charged, and that he may by demurrer take the opinion of the court whether the facts charged constitute an offense.

In *Jesse* v. *The State*, 28 Miss. 100, the defendant had been indicted under a statute which provided that, " If any slave be guilty of burning any dwelling-house, store, cotton-house, gin, or out-house, barn, or stable, etc." The indictment was in the words of the statute, and it was held insufficient, for the reason that the statute was intended to punish a *malicious* burning only.

A statute declared that, " If any clerk of any court, or public officer, or any other person, shall wittingly make any false entry, or erase any word or letter, or change any record belonging to any court

or public office, whether in his keeping or not, he shall on con-
viction, etc." It was held that the purpose of the act was to pre-
vent such change, erasure, or false entry to the end that some
one might be thereby benefited or injured, as were intended or
calculated to damnify some person or benefit the person making
it, and that an indictment which failed to aver such fact was
fatally defective. *Harrington* v. *The State,* 58 Miss. 490. The
facts developed on the trial of that case disclosed that the de-
fendant, a clerk to the treasurer, erased the number of a warrant
that had been erroneously entered on the treasurer's book and sub-
stituted the true number. These cases were decided on the ground
that a person might under circumstances lawfully do the things
forbidden in the most comprehensive manner by the mere letter of
the statutes.

" The verdict of a jury does nothing more than verify the facts
charged ; and if these do not show the party guilty, he cannot be
considered as having violated the statute." SHAW, C. J., in *Com-
monwealth* v. *Odlin,* 23 Pick. 275. Where, therefore, the language
of the statute is broader than its purpose, and the indictment is in
the words of the statute, it cannot be told whether the jury intended
to find the defendant guilty of the act forbidden by the statute, or
of those only, within its literal but not its true construction. It
is therefore necessary for the pleader to depart from the statute and
indict in words aptly charging an offense, in all cases in which the
words of the statute do not by legal intendment import a particular
offense certainly committed by one who has violated its literal
language.

The statute under consideration declares in general terms that it
shall be, "unlawful for any person to engage in prize-fighting in
this state." What is a prize-fight is not declared, but must be dis-
covered by the courts from the known meaning of the terms used
and the evil intended to be provided against. The meaning of to
fight, according to Webster, is " to strike or contend for victory,
in battle or in single combat; to attempt to defeat, subdue, or de-
stroy an enemy, either by blows or weapons."

Worcester gives practically the same definition.   Prize is defined by Worcester to be, " a reward gained by contest or competition," and by Webster as, " that which is obtained against the competition of others ; anything carried off as the result or award of a contest." Worcester defines prize-fighter as, " one who fights or boxes publicly for a reward," and prize-fighting, as " the act or the practice of fighting for a prize." Webster defines prize-fighter as, "one who fights publicly for a reward," and prize-fighting as, " fighting, especially boxing, in *public*, for a reward or wager." He defines prize-fight to be, " a contest in which the combatants fight for a reward or wager." Worcester gives no definition of this word. It thus appears that while these two lexicographers define a prize-fighter to be one who fights *publicly* for a reward, Worcester defines prize-fighting as the act of fighting for a *prize*, while Webster defines it as a fighting in *public* for a reward or *wager*, and prize-fight to be a contest in which the combatants fight for a reward or wager.   According to the lexicographers, it would seem to be left doubtful whether to constitute a prize-fight there must be a fighting in public.

We think, however, that the evil sought to be protected against by the statute is the debasing and brutalizing practice of fighting in public places, or places to which the public or some part of it is admttted as spectators.   The act was not passed in tenderness to those who participate in such contests, nor to afford them protection by discouraging the practice.   We must either construe the act as prohibiting all contests, whether public or private, where a prize or wager is determined by blows, or as intended to apply only where others than the contestants are admitted as spectators.

The second section of the act declares that if death result from the fight, the party causing it shall be guilty of murder, or if mayhem results the punishment for that crime shall be inflicted. By the third section, the aiders and abettors of " such prize-fighting" are declared guilty of a misdemeanor.   These sections add strength to the conclusion, which would properly be drawn from the first only, that the prize-fighting intended to be prohibited

is that which is public in character and tends to disturb the peace and quiet of the community in which it occurs, and to debase not only the participants but others who are admitted as spectators.

A private contest between individuals, whether amateurs or professional fighters or boxers, though it be for a prize or wager, would not be a violation of the particular statute under consideration, though the participants might be guilty of assault and battery, or of gaming. A fight or contest under such circumstances would be a fight because a contest determinable by blows, and a prize-fight because a prize or wager would be awarded to the victor, but it would not be a prize-fight within the meaning of the statute, which prohibits such fights only as are offences against public peace and order. Since, therefore, the appellant might fight for a prize under such circumstances as would not be violative of the statute, it is not sufficient to indict by the use of the statutory words only, but the facts which, if proved, show him to be guilty of the statutory offense must be charged.

The indictment is defective for another reason. The offense can only exist where two persons engage in the unlawful act; the parties are severally guilty, but the guilt of each springs from the joint unlawful act; one man cannot commit the offense. The indictment in this case does not follow the usual form by charging that Sullivan and Kilrain fought together and against each other. It avers that Sullivan, " in pursuance of a previous appointment and arrangement, made to meet and engage in a prize-fight with Jake Kilrain, for a large sum of money, did unlawfully engage in a prize-fight with the said Jake Kilrain, to wit: did then and there enter a ring, commonly called a prize-ring, and did then and there, in the said ring, beat, strike and bruise the said Jake Kilrain, against the peace and dignity of the state of Mississippi.' " The clause preceding the *videlicet,* that Sullivan " unlawfully did engage in a prize-fight with the said Jake Kilrain," is the only portion of the indictment by which even an indirect charge is made, that Kilrain did anything in the fight, and the pleader excludes the conclusion that he did fight, by setting out under the *videlicet* how Sullivan so engaged in a prize-fight, viz : by going into a prize-ring,

and then and there beating Jake Kilrain. The common office of a *videlicet* is to state time, place, or manner which are not of the essence of the matter in issue, and thereby to relieve the party of the duty of proving the allegation strictly as made ; but it may be and is frequently used as particularizing the more general antecedent matter. "A *videlicet*," says Lord Hobart, "is a kind of interpreter; her natural and proper use is, to particularize that that is before general." It may work a restriction when the former words are not express and special, but so indifferent as they may receive such restriction without apparent injury, though these former words by construction of law would have had a larger sense if the *videlicet* had not been. *Stukely* v. *Butler*, Hob. 172 ; Dakin's Case, 3 Saunders', 290, note *a*. "If a party pleading use a generic term, comprising, therefore, many species or particulars, and afterwards use an averment, defining which particular or species of the number he insists on, he is tied up to that particular one. (The reason may be, that he leads his adversary to suppose he only means to rely on that, who therefore confines his proof accordingly.)" 3 Term Rep. 307 ; 2 M. &. S. 379 ; Com. Dig. Pleader, C. 22. "Every indictment ought to be so framed as to convey to the party charged a certain knowledge of the crime imputed to him. If expressions are used, which leave it in doubt whether all of several facts, or some only are charged against him, subsequent averments must be used, defining and tying up this generality." Com. Dig. Pleader, C. 22. In *Mallett* v. *Stevenson*, 26 Conn. 428, a warrant had issued commanding the officer to seize "certain intoxicating liquors, to wit : several casks of French brandy, containing twenty-five gallons, more or less ; several casks of gin, containing twenty-five gallons, more or less, also several casks of intoxicating wines, containing twenty-five gallons, more or less." The officer seized some French brandy, and also a quantity of *rum, cider brandy* and *pale brandy*. It was held that the warrant did not justify the seizure of the latter articles. The court said : "Intoxicating liquors is the name of a genus of which brandy, gin, etc. are species, and although we agree with the judge who tried the cause, that the particular species of liquor, when the species is unknown, need not be

stated in the complaint or warrant, yet the objection in this case is, not that all the liquors seized were not designated by their specific names, but that the generic name, ' intoxicating liquors,' was by *videlicet* restricted to the species particularly described under it, so that no intoxicating liquors besides those designated by their specific names, were complained of, or proceeded against under any name, general or specific." In *Harris* v. *Manth,* 3 T. R. 311, breach of covenant was assigned : "That the defendant has not used a farm in an husband-like manner, *but* on the contrary has committed waste." *Held,* that plaintiff could not give in evidence defendant's unhusband-like use, if it did not amount to waste. "When the matter stated under the *videlicet* is immaterial, it may be rejected as surplusage ; but where the precise time is the very point and gist of the cause, there the time alleged by the *videlicet* is conclusive and transversable, and it shall be intended to be the true time and no other ; and if impossible or repugnant to the premises will vitiate the plea ; if true, will support the defense." Blackstone in argument in *Bishop of Lincoln* v. *Wolfreston,* 1 Black. Rep. 495. " And the distinction seems equally to apply to every other matter which comes under the *videlicet.*" Note to *Dakin's Case,* 3 Saunders', 290 ; Bishop on Crim. Pro., 406.

If the averment of the indictment had been that Sullivan and Kilrain " fought together and against each other," the allegation under the *videlicet* might be referred to Sullivan's action in such fight, but, as we have said, the antecedent clause only states that *Sullivan fought* with Kilrain, and the *videlicet* explains and particularizes the whole of the previous averment by showing how he fought with him. So read the indictment is as though the pleader had said that Sullivan engaged in a prize-fight with Kilrain, by going into a prize-ring, and there beating and bruising him. This avers the several act of Sullivan to constitute a prize-fight, and in the nature of things that cannot be. As we have said, the parties in a prize-fight are severally guilty, but the guilt of each must arise from the joint act of two. The present indictment illustrates the wisdom of the advice given by Mr. Bishop, " to have nothing to do with the *videlicet,* unless in exceptional circumstances."

The demurrer to the pleas in abatement should have been extended to the indictment, and the first count of the indictment quashed.

*The judgment is reversed, the first count of the indictment quashed, and the appellant held to answer at the next term of the circuit court of Marion county such indictment as may be preferred against him.*