Wiuwams, J.
The plaintiff in error, David Seville, was - indicted for a violation of section 6888, of the Revised Statutes, which provides that, “whoever engages as principal in :any prize fight shall be imprisoned in the penitentiary not more than ten years nor less than one year.” The indictment charges that, on the 25th day of February, A. D. 1891, at the county of Athens, David Seville “ did unlawfully engage as principal in an unlawful and premeditated fight and contention *131 commonly called a prize fight, with one Arthur Majesty, and in said fight the said David Seville and Arthur Majesty did, each the other unlawfully strike and bruise and attempt to strike and bruise for and in consideration of prize and reward.”
The trial resulted in the conviction of Seville, which was followed by the sentence of the court; and one of the grounds upon which he asks a reversal here, is, that the indictment is defective.
The specific objections made to the indictment are, (1) that it fails to allege the fight was in public; (2) that it does hot negative the existence of the facts mentioned in the proviso of section 6890, of the Revised Statutes, and, (3) that it contains no direct averment that the accused engaged in a prize fight.
1. In support of the first of these objections, the case of Sullivan v. State, 67 Miss. 346, is cited, and relied on. The Supreme Court of Mississippi, in that case decided that an indictment drawn under a statute, making it “unlawful for any person to engage in prize fighting,” in that state, was insufficient, because it did not, aver that the fighting took place in public; the court holding, that the statute was intended to prohibit prize fighting of a public character only. We are not inclined either to approve of that decision, or adopt a corresponding construction of our statute. While, no doubt, it was one of the purposes of the statute, to prohibit public exhibitions of prize fighting, on account of their tendency to incite quarrels and breaches of the peace, it was, we think, none the less its purpose to suppress all prize fighting, because of its brutality, and consequent danger to human life, as well as the demoralizing and pernicious effect it has on the good order and well being of society. It is not, by our statute, made an essential ingredient of the crime of engaging in a prize fight, in this state, that it take place in public. The term “prize fight,” has no technical legal meaning. The Century Dictionary defines it as, “ a pugilistic encounter or boxing match for prize or wager;” and other lexicographers who define it, give it substantially the same definition. It is used in the statute in its ordinary signification of a fight for a prize or reward, and *132 includes all fights of that character, however conducted, and whether witnessed by many or by few people.
2. Section 6890, of the Revised Statutes, makes it an offense, called an affray, for any two persons to agree and wilfully fight or box at fisticuffs, or engage in any public sparring or boxing exhibition, with or without gloves; for which, the penalty is fine, or imprisonment, or both. The section contains a proviso, to the effect, that it shall not apply to the exercises in any public gymnasium or athletic club, if written permission therefor shall have been obtained from the sheriff of the county or mayor of the municipality in which the exercises are held; and the second objection here urged to the indictment by the plaintiff in error is, that it should, by proper averments, negative the existence of the matters contained in this proviso. This objection is not well taken. It is the well settled rule of criminal pleading, that it is not necessary, in an indictment, to negative the existence of facts to which an exception or proviso in a statute relates, unless the matter of the exception or proviso is descriptive of the offense, or qualifies the language creating it. Hirn v. State, 1 Ohio St. 15. Engaging in a prize fight in violation of section 6888, is a separate and distinct offense from that defined and punished by section 6890,, and while the proviso qualifies the previous clauses of the latter section,, it has no application to the former section.
3. Nor do we think the indictment lacks a direct averment that the accused engaged as principal in a prize fight. The averment that he engaged as principal, with ’ another,, in an unlawful and premeditated fight, commonly called a prize fight, for a prize and reward, is sufficient to apprize the accused of the nature of the accusation, in this respect. The indictment meets the requirements of the rules of criminal pleading, and appears to be drawn in accordance with the forms long in use, and approved by well known authors. Warren’s C.rim. Law, 241; Wilson’s Ohio Crim. Code, 3rd ed. 105; Maxwell’s Crim. Proceedure, 230.
4. On the trial, the state gave evidence tending to prove, that Douglas Nelson and Emil Rosser, two citizens of Nfel-sonville, about the 1st of February, 1891, made an arrangement with Seville, by which the latter agreed to engage in a *133 fight at Nelsonville, at a future day to be named, with a person not exceeding a specified weight, to be chosen by them, for a prize of two hundred dollars to be paid to the winner. The arrangement with Seville, was communicated to Majesty, who at once agreed to engage in the fight against Seville, which, it was arranged, should take place at Nelsonville on the night of February 24, 1891. When the agreement was made with Seville, lie did not know the name of his adversary, nor did he learn it, until the day set for the fight. Soon after the details of the engagement were completed, Majesty, who resided in Toledo, went to Nelsonville with his trainer, and put himself in training for the conflict. While there, he wrote two letters to his friend Alfred Stephens, which were directed and mailed to him at Newark, Ohio, and which were received by Stephens in due course of mail. These letters were admitted in evidence against the objection of the defendant, and their admission, it is claimed, was error, for which the judgment should' be reversed. The letters are as follows:
“Nelsonville, O., Eeb’y 15, 1891. Friend Alfred. Would like to have you come to Nelsonville, O., where I am matched to fight Seville, of Columbus, for a purse of $200, to a finish, with 2 oz. gloves. You can call on Keere Bros, in the saloon business; they will be down here. Do not tell them who I am or that you know me, as I go under the name of A. B. Tracy. Our protection is good, as we have a license. Come if you possibly can. We fight on Feb. 24th in the evening, will see you all right. Am in-training here; if you come this way stop and see me. Yours truly, Arthur Majesty. Address A. B. Tracy.”
“Nelsonville, O., Feb’y 20th, 1891. Friend Alfred. The man I meet is Seville, of Columbus, and we fight at 120 pounds for a purse of $200.00, all to go to the winner. Nelson and Rosser of this place, are handling me. I don’t anticipate any trouble in disposing of him. John Hall, of Toledo, is with me. You have met him before. Tickets are $3.00 per head, but I will place you all right, but do not let those people of your town know of it. If you can, induce them to come and see the fight, it is to a finish with two ounce gloves in a large hall with a seating capacity of *134 800 on elevated seats around the ring, same as all first rate clubs. Yours truly, Arthur Alias A. B. Tracy.”
An agreement to engage in a prize fight, is a conspiracy to commit a crime; and the declarations of either of the parties, written or verbal, .with reference to the common object, or in furtherance of the criminal design, while in its prosecution, are competent evidence against the other, although the agreement was made through and by backers, or other representatives of the principals, and the latter were unknown to each other. The letters referred to, contain declarations of this character; their purpose being, to procure the presence of friends and others at the fight, and thus encourage, and contribute to the success of the unlawful enterprise. The court in its charge, carefully limited the effect of this evidence, by instructing the jury, that before it could affect the accused, the jury must find beyond a reasonable doubt, that when the letters were written, he and Majesty had entered into an agreement) either personally or through their agents, to engage in a prizefight, and that they were written while Majesty was engaged in preparations for the fight, and were in furtherance of it.
5. The defendant offered to prove in his defense, that there was an athletic club at Nelsonville, where the pugilistic contest was held, and that a license authorizing it, had been issued by the mayor of the village; and for that purpose, the articles of association of the club, and license of the mayor, were offered in evidence but excluded.
The articles, which bear the date of February 23, 1891, state, that “the undersigned citizens of Nelsonville intend to establish an athletic club for the purpose of training in wrestling, boxing and other athletic exercise;” they prescribe the terms of membership, and designate the officers to be chosen. The only evidence of the execution of the paper, was that of a witness who testified that he drew it up; but there was no proof of the signatures to it, or of any organization under the articles. The license offered in evidence, is dated February 23, 1891, and purports to grant permission to the Nelsonville Athletic Club to exhibit a glove *135 contest “for one day only, February 24, 1891.” If the defendant bad been indicted for a violation of section 6890, the evidence offered would have been competent and material. But such a license, to a club of the kind mentioned, is no defense to an indictment under section 6888. If the defendant engaged in a prize fight, it was immaterial whether a license had been issued to an athletic club for that purpose, or for the purpose of giving a boxing exhibition, or not. If he did not, but simply engaged in a sparring or boxing exhibition, he must be acquitted, though no license was obtained. Neither the articles of the club, nor license of the mayor, was competent evidence tending to prove that what actually occurred constituted a sparring or boxing exhibition. At most, they tended to show, that the mayor only intended to license a boxing exhibition, and that the club was authorized to give such exhibition; neither of which facts was material, in determining whether what actually occurred, was, or was not, a prize fight.
6. The defendant called a witness who testified that he had been engaged in fifty-two prize fights and boxing matches altogether, and had spent six years in acquiring the art of boxing. He was then asked, by counsel for the defendant, to state what “are the rules that apply to a glove contest, and also' to a prize fight.” An objection to the question was sustained. The purpose of the question, as stated by counsel, was to prove that, by the rules governing prize fights, there is no limit as to the time of the rounds, the combatants are permitted to wrestle and throw each other, the fight is to a finish, the fight is without gloves, and spikes are worn in the shoes; while the rules governing-glove contests, require the parties to wear gloves, spikes in the shoes are not allowed, the contest ends at the conclusion of a specified round, and each round is limited in point of time, to three minutes. The witness further testified that he saw the combat between the defendant and Majesty, and was then asked by defendant’s counsel, whether it was conducted according to the rules of a glove contest, or those of a prize fight. This question was objected to, and the objection sustained. The counsel stated, they expected, the wit *136 ness to answer that it was conducted according to the rules of a glove contest. Thereupon the witness was handed a couple of papers, one of which, he said, contained the Queens-bury Rules, and the other the Eondon Prize Ring Rules. These papers were then offered in evidence by defendant’s counsel, but they were held to be incompetent. These, several rulings of the court are assigned for error.
The question to be determined by the jury was, whether what took place between the defendant and Majesty, at the time and place charged in the indictment, was a prize fight. The witnesses for the state, and for the defense, testified in detail to what occurred on that occasion, and there was but little, if any, substantial conflict in the testimony. It showed, beyond any doubt, that the combatants met in the ring prepared for the purpose, in pursuance of the agreement previously made, and fought viciously to a finish. They fought seventeen rounds, and on the eighteenth, Majesty was knocked reeling to the ropes, and carried away in a dazed and unconscious condition, and in a few hours afterward died from the effect of the blows received. The post mortem examination disclosed, that his vital organs were in a healthy and sound condition. His scull was fractured by one of the blows, and an artery of the brain ruptured, which caused his death. His head, neck, one arm, and his body, showed the severity of the blows he had received. One eye was blacked, his nose cut, his mouth and lips bruised and swollen, and the physicians say, that his neck, arm, and body were black and blue from bruises produced by blows. Witnesses describe the blows struck him, as bitter blows; and yet, up to the last round, they say, Seville’s punishment was even greater than that administered to Majesty. When Majesty was carried, disabled and dying, from the scene of the conflict, the prize money was paid over to Seville, who departed by the first train.
The question for the jury to decide, was, whether this combat was a prize fight; not, what the Queensbury Rules, or any other rules called it, nor what name those accustomed to such combats, have given it. What was it in plain English? And this question of fact, under a proper instruction *137 from the court as to what constitutes a prize fight, the jury was as competent to decide, as the most experienced boxer or prize fighter. ‘The question was not one of skill, or science, to be decided upon the opinions of those experienced in such practices, or by rules adopted for the government of associations of such persons; but one, within the comprehension of the common understanding, and the range of common knowledge, which the jury could decide, upon the facts proven, as well as a professional pugilist.
Some other questions are made in the record, but they are not of sufficient importance to call for a report.
We have carefully examined the whole record and find no error for which the judgment should be reversed.

Judgment affirmed.