STATE v. Z. P. JONES.

[58 South. 782.]

1. INDICTMENT. *Embezzlement. Sufficiency of evidence.*

An indictment charging that defendant was the president of the
board of supervisors of Lincoln county and that being such
officer he received a sum of money from one G. for a fine and
cost due the county by W., which fine had been legally imposed
and was a debt due the county when paid the defendant, and
that said money was paid defendant for the county and that
defendant did unlawfully willfully, feloniously embezzle said
money, the property of said county, and that defendant did con-
vert said money to his own use with intent to cheat and defraud
the said county—is insufficient to charge the crime of embezzle-
ment.

2. SAME.

While such indictment charges that defendant was the president
of the board of supervisors of the county, it does not charge
that the money was received by virtue of his office or by the
color of his office or by reason of the fact that he was presi-
dent of the board of supervisors; and if it had so charged it
does not follow that the money intrusted to him thereby became
the property of the county, on the contrary the county did not
become the owner, but the defendant took the money as the
trustee of the party who intrusted it to him and the title to
the money never passed to the county.

3. SAME.

Under such indictment, had defendant been acquitted, he could
not have pleaded a former acquittal to an indictment charging
him with embezzling this money as the property of G. or W.,
and for this reason the indictment was fatally defective.

APPEAL from the circuit court of Lincoln county.

HON. D. M. MILLER, Judge.

Z. P. Jones was indicted for embezzlement.    From a judgment sustaining a demurrer to the indictment, defendant appeals.

The facts are fully stated in the opinion of the court.

*Frank Johnston,* assistant attorney-general, for appellant.

It is true, that the president of the board of supervisors had no technical legal authority to receive the money for the county, but he did, in fact, receive the money by virtue of the color of his office, and he must have expressly, or impliedly, held himself out as having authority to collect the money, and stood in the transaction as an official clothed with the authority to receive the money.    The question whether an official has the technical legal authority to collect the money which he receives and embezzles cannot be made the test, or the essential ingredient, of this crime.    The case of a *de facto* officer presents a strong, if not an irresistible, analogy to a case of this precise character.    A *de facto* officer has no technical legal authority, no authority, in fact, whatever, *de jure,* to do any official act, which includes the total want of technical authority, of course, to collect any moneys of the government, but if a *de facto* officer is guilty of any maladministration in office, including the embezzlement of public funds, the rule is well settled that he is guilty of embezzlement, and this although he had no technical legal authority for collecting the money; and though, in point of law he collected the money without authority, he is not permitted by the courts, after having received the money because of his office and after having embezzled the same, to turn around and say that he had no legal authority for receiving the money, and therefore cannot be held responsible for the same.    In other words, he is estopped from

denying his authority to collect the money in an indict-
ment for embezzlement. This doctrine was expressly
held by this court in the case of *Fortenberry* v. *State,*
56 Miss. 286. It is a rule that is generally recognized
by the courts and the law writers. 1 Wharton Criminal
Law (10 Ed.), 903, 15 Cyc. 503.

Here the defendant collected this money upon the as-
sumption, and upon the belief of Graham who gave it
to him, that he had the authority to receive the money
for the county; that upon this assumption, he was en-
abled to get possession of this money by virtue of the
official position held by him, or he could never have
collected this money. He acted illegally and immorally
in receiving this money. In a civil proceeding, he would
be absolutely estopped from setting up his own wrong
against the county in a claim by the county against him
for this money. Upon what principle, reason, or au-
thority, can he, therefore, be permitted or allowed to set
up his own wrong in defense of the present charge that
is made against him? In every fair, just, rational and
substantial sense, he received this money by reason or
because of this official position as president of the board
of supervisors. He has appropriated this money to his
own use (as is conceded by the demurrer to the indict-
ment), and upon what principle can he now be permitted
to claim that he fraudulently imposed upon Graham in
receiving this money from him under color of his office?

*T. Brady, Jr.,* for appellee.

The principal, or rather the essential elements of the
crime of embezzlement under the statutes of this state
are: 1. That the accused occupied one of the several
fiduciary relations specified; 2. That the money or prop-
erty belonged to his principal; 3. That it came into the
possession of the accused by virtue of the specified fidu-
ciary relation; 4. A conversion to his own use by the
accused with the intent to cheat and defraud his princi-

pal; and in the absence of any one of these vitalizing elements the crime of embezzlement cannot be committed. The statutes of Mississippi do not define with particularity the crime, therefore, it is not sufficient to charge the offense merely in the language of the statute without alleging the facts and circumstances more particularly. *Harrington* v. *State,* 54 Miss. 490; *Finch* v. *State,* 64 Miss. 461; *State* v. *Bardwell,* 72 Miss. 538. Under section 1066, Code 1892, in force at the time the acts complained of by the state in the instant case were committed, it would be essential to allege the specific elements of the crime of embezzlement against a public officer including the third as above enumerated. It is to be noted that even under this statute it is limited to those who are "officers or other persons employed in any public office who shall commit any fraud or embezzlement therein, etc."

Section 1063, Code 1892, in force at the time provides that: "If any officer of . . . any district or subdivision of a county . . . shall unlawfully convert to his own use any money or other valuable thing which comes to his hands or possession by virtue of his office . . . he shall, on conviction, be imprisoned in the penitentiary not more than twenty years, etc."

Section 1058, Code 1892, provides against embezzlement by agents, clerks, servants, or officers of incorporated companies, and by trustees, bailees, clerks, agents or servants of private individuals and prescribes a penalty of not more than ten years in the penitentiary. It is manifest, therefore, that the state attempted to indict the appellee under section 1063, *supra,* as an officer of a district of the county. The indictment charges that he was such officer, to wit, president of the board of supervisors and a member of said board from district No. one, on the 4th day of September, 1911, "and being such officer, as aforesaid, did then and there, on March 20, 1906, receive the sum of one hundred and forty-four dollars

in money of and from one M. Graham for the fine and cost due Lincoln county by one Will Wall.'' Not that he received the money as such officer, or by virtue of his office, or by color of such office, or, on account of such official position, but while he was such an officer is the very strongest inference that can be drawn from the indictment. It does not affirmatively appear that he was even an officer on March 20, 1906, at the time the money is alleged to have been delivered to him by Graham. To my mind should I pay to Capt. Johnston, the learned assistant attorney-general, my privilege tax as attorney while he holds his commission from the state of Mississippi, he being an officer, and he should fail to deliver that money to the sheriff of Lincoln county, the authority under the law to whom such taxes must be paid by me, a parallel case would be presented by an indictment against him for embezzlement of the funds belonging to the state of Mississippi. Even should the indictment charge, in the hypothetical case, that the money was received by Capt. Johnston by virtue of the office which he holds and the duties of which he so ably performs, an indictment for embezzlement of the funds of the state would not lie, about which I shall have more to say under another head.

In the instant case, therefore, we say that the appellant is not supported by the record when it is contended that: ''This money was received by the president of the board of supervisors solely by reason of the fact that he was a high county official; that he got this money by reason of the fact, and by reason alone of the fact, that he held the office of president of the board of supervisors.''

And that: ''In fact, he assumed the authority to so receive this money, and did so receive as president of the board of supervisors and that otherwise the money would never have been paid to him.''

Aside from the effect of the absence of appellee's legal right to receive the money due the county for a fine if it

were paid to and accepted by him as a member or president of the board, about which I shall hereafter have something to say; that question is not necessarily presented by this record by reason of the absence of any allegation upon which the appellant's lengthy argument can be predicated. The facts quoted from its brief above are assumed by the writer and find no support in the indictment to which the demurrer was sustained, and the judgment of the court below, for that reason alone, should be affirmed.

The person dealing with the officer knows the scope of the officer's authority under the law. There can be, therefore, no element of estoppel in such case.

That it is absolutely necessary in a prosecution against a public officer that the money was received or held by him in his official capacity or by virtue of his office. See 15 Cyc. 524, 10 Am. & Eng. Ency. Law (2 Ed.), 990.

In the case of *Moore* v. *United States,* 160 U. S. 268, 40 L. Ed. 422, the question of the necessity of the receipt of money by an officer by virtue of his office was considered and it was held that: "An indictment which charges that the defendant, being an assistant, clerk, or employee in a postoffice, did embezzle a certain sum of money, the property of the United States, is deficient in not alleging that such sum came into his possession in that capacity."

In the course of the opinion the Supreme Court of the United States say: "The cases reported from the English courts and from the courts of the several states have usually arisen under statutes limiting the offense to certain officers, clerks agents or servants of individuals or corporations, and the rulings that the agency or fiduciary relation must be averred as well as the fact that the money embezzled came into the possession of the prisoner in that capacity are not wholly applicable to a statute which extends to every person regardless of his employment or of the fact that the money had come into

his possession by virtue of any office or fiduciary rela-
tion he happened to occupy. These cases undoubtedly
hold with great uniformity that the relationship must be
averred in the exact terms of the statute—and that it
must also be averred that the money came into the pos-
session of the prisoner by virtue of his fiduciary relation
to the owner of the property.''

Further, that court, in the same case said: ''If the
words charging the defendant with being an employee
of the postoffice be material then it is clear under the
cases above cited, that it should be averred that the
money embezzled came into his possession by virtue of
such employment. Unless this be so, the allegation of
employment is meaningless and might even be mislead-
ing since the defendant might be held for property re-
ceived in a wholly different capacity—such, for instance,
as a simple bailee of the government. In the absence of
a statutory regulation the authorities on this subject are
practically uniform.''

10 Am. & Eng. Ency. Law (2 Ed.), 992: ''There are
some precedents which sustain the proposition that one
who collects money for or on account of another is es-
topped in a prosecution for embezzling the same to deny
that he had authority to receive it.'' (Citing 69 Cal.
226, and Ricord, 11 Nev. 287.) This view, however can-
not be sustained without ignoring the express require-
ment of the statute, and it is opposed to the great weight
of authority.

*Cassedy & Butler*, for appellee.

A fair test of whether or not the money was received
by virtue of his fiduciary relation to the county, is
whether or not his official bond would be liable in case
of default, though this test is really more strict than
should be employed, for in this state the bond is liable
whether the fund came into hand under color of or by
virtue of the office. *Adams* v. *Sanders,* 89 Miss. 936.

This principle is illustrated in this state by the following cases: *Brown* v. *Phipps,* 6 S. & M. 51; *Brown* v. *Mosley,* 11 S. & M. 354; *Radford* v. *Hull,* 30 Miss. 713; *Edwards* v. *Ingraham,* 31 Miss. 273; *Grane* v. *Bedwell,* 25 Miss. 507; *Furlong* v. *State,* 56 Miss. 717; *Oil Co.* v. *Weatherford,* 91 Miss. 501.

Some of these cases are where the sheriff had collected funds without an execution in his hands, and it was there held that he was merely the agent of the plaintiff or the defendant, as the case might be, in making the collection and that the money did not come into his hands by virtue of his office.

One of the leading and a very recent case on this subject is: *Hartnett* v. *State,* 133 Am. St. Rep. 971.

It was there held that a police officer assigned to the position of jailor could not be convicted under a statute providing that, if an officer shall convert to his own use money belonging to the county that may come into his custody by virtue of his office he shall be punished where he appropriates to his own use money collected from prisoners as fines if the statute imposes the duty of collecting such fines upon another officer, and that because he assumed to make such, collected by color of his office, did not estop him from denying his authority so to do.

In the case at bar it is not alleged that Jones collected the money by virtue of his office or by color of his office, nor are there any facts alleged to show the collection to have been made by him under such pretended or asserted authority.

In the case cited, as in the case at bar, the duty to collect the fines is imposed by law on an officer other than the accused, and the cases are otherwise similar in all respects, save only, that the question here arises on an indictment and the question there arose on the proof.

The Texas court cites with approval the case of *State* v. *Bolin,* 110 Mo. 209, and points out that the statutes of Missouri are much broader than the Texas statute, and

the court will note that the Texas statute is almost identical with the statute under review.

The court also cites with approval the case of *Worsick* v. *State*, 36 Tex. Crim. Rep. 63, in which case it was held that a similar indictment would not lie against a county judge for a misapplication or conversion of county school fund because such fund could not come into his hands by virtue of his office, and the law did not authorize him as such officer to receive such funds.

In *United States* v. *Smith*, 124 U. S. 525, it was held that a clerk of the collector of customs was not by statute charged with the safe-keeping of the public moneys, and therefore, could not be guilty of embezzlement of the same.

* In *Commonwealth* v. *Alexander*, 33 Ky. Law Rep. 971, it was held that a sheriff forbidden by law to collect taxes on unlisted property could not be convicted of embezzling money so collected as property belonging to the state or county, since under the statute to warrant a conviction the officer must have been rightfully in possession of the money and misappropriated it, whereas in that case the sheriff was considered as holding the money in trust for the use of the persons from whom he received it.

In *Moore* v. *State*, 53 Neb. 831, it was held that the auditor of public accounts who received fees in violation of the constitution which forbade him to receive the same and required that they be paid to the state treasurer, could not be convicted of embezzling such fees.

In *State* v. *Newton*, 26 Ohio St. 265, it was held that a county auditor not being charged by law with possession and custody of money belonging to the state, an indictment charging him with converting money of the state which came into his possession by virtue of his office and in the discharge thereof or other person charged with the collection, etc., of public money if he converts the same to his own use, could not be convicted of embezzlement.

102 Miss.—7

A similar decision was rendered with respect to a deputy county treasurer in *State* v. *Meyers,* 56 Ohio St. 340.

A somewhat similar case is that of *United States* v. *Hutchinson,* 4 Clark (Pa.), 211.

In *Rex* v. *Ormond,* 36 Eng. L. & Eq. 611, it was held that a storekeeper of a county jail whose duties are defined by statute was not guilty of embezzlement for wrongfully converting money which he was not allowed to receive.

It is true that in a few cases, such as *People* v. *Royce,* 106 Cal. 173; *People* v. *Robertson,* 6 Cal. App. 514; *State* v. *Spaulding,* 24 Kan. 1; *Denton* v. *State,* 77 Md. 527, it is sometimes asserted that where an officer exceeds his authority he is estopped to deny the validity of his act.

Argued orally by *Frank Johnston,* assistant attorney-general, for appellant.

Argued orally by *George Butler,* for appellee.

Cook, J., delivered the opinion of the court.

This is an appeal by the state from the judgment of the circuit court of Lincoln county, sustaining the demurrer to an indictment charging appellant with the crime of embezzlement.

Omitting the formal parts of the indictment, it reads as follows: "Z. P. Jones did, on the 4th day of September, 1911, in the county aforesaid, being then and there a public officer of Lincoln county, said state of Mississippi, to wit, a member of the board of supervisors from district No. 1 of said county and state, and being then and there president of said board, and being such officer as aforesaid, did then and there, on March 20, 1906, receive the sum of one hundred and forty-four dollars in money of and from one M. Graham for the fine and

cost due Lincoln county, said state of Mississippi, by one
Will Wall, which had been legally imposed against the
said Will Wall, and being then and there a legal debt
due by the said Will Wall to Lincoln county as aforesaid,
and being then and there the money and property of
Lincoln county when paid and delivered to the said Jones
as aforesaid, and the said money being then and there
intrusted to the said Jones for Lincoln county, and it
being then and there in his hands and in his possession,
the said Jones did then and there unlawfully, willfully,
and feloniously embezzle the said sum of one hundred
and forty-four dollars, the money and personal property
which had come into his possession and which had been
intrusted to him as aforesaid, and being the money and
property of Lincoln county as aforesaid, and the said
Jones did then and there unlawfully, willfully, and fe-
loniously convert said sum of money to his own use and
benefit, with the felonious intent to cheat and defraud
the said Lincoln county of the said one hundred and
forty-four dollars as aforesaid, contrary to the form of
the statute," etc.

We do not deem it necessary to undertake to distin-
guish the line of cases cited by the attorney-general in
support of the indictment from the instant case. These
cases are, in our opinion, totally inapplicable to the ques-
tion involved here. The cases cited are to the effect
that a servant, indicted for embezzling the money of his
master, cannot be heard to say that he exceeded his au-
thority in the time, or the place, or the manner in which
he came into possession of his master's property. No
such state of facts are involved in this case. The trou-
ble with this indictment consists in the fact that the
averment of ownership of the money alleged to have been
embezzled is in direct conflict with the other averments
of the indictment reciting to whom and under what cir-
cumstances the money is averred to have been paid to
the defendant. The defendant, therefore, does not seek

to escape upon any such technicality. It will be noted that there is no averment in this affidavit that the appellant, who it is averred was president of the board of supervisors, received the money by virtue of his office, or by the color of his office, or by reason of the fact that he was president of the board of supervisors. If it was so charged, it does not follow that the money intrusted to him thereby became the property of Lincoln county. On the contrary, the county did not become the owner, and, at best, the defendant took the money as the servant or trustee of the party who intrusted it to him, and, the title to the money never having passed to the county, the demurrer raises the question as to whether or not he is properly charged with embezzling the money of the county.

If the defendant had gone to trial upon this indictment, and secured an acquittal from the jury, he could not thereafter have pleaded a former acquittal in bar of another indictment reciting all that this indictment contains, except the averment of ownership, which was stated to be in Graham or Wall. If the facts are as alleged in the indictment, the defendant embezzled the property of Graham or Wall, and not the property of Lincoln county, and for this reason this indictment was, in our opinion, fatally defective. There was no fiduciary relationship existing between appellee and the county, and the mere averment that when the money was paid to him it thereby became the property of Lincoln county does not make it a fact, when the other averments are in irreconcilable conflict with this averment.

*Affirmed.*