SANDERS *v.* STATE.*

[105 So. 523.   No. 24831.]

(In Banc.   Oct. 19, 1925.)

1. CRIMINAL LAW.  *Courts take judicial notice of beginning and end-
ing of terms of public officers, but not of names of persons oc-
cupying offices at any given time.*

    The courts will take judicial notice of the beginning and ending of
    the terms of public officers, but will not take judicial notice as to
    the names of persons occupying such offices at any given time.

2. EMBEZZLEMENT.  *Indictment for embezzlement not required to
charge that conversion of public funds was made with intent
to cheat and defraud.*

    An indictment for embezzlement by a public officer under section
    1141, Code of 1906 (section 869, Hemingway's Code), charging
    such officer with unlawfully, fraudulently, and feloniously con-
    verting to his own use public funds coming into his hands by
    virtue of his office, is not required to charge that such con-
    version was made with intent to cheat and defraud.

3. INDICTMENT AND INFORMATION.  *Indictment for embezzlement need
not set out extrinsic facts constituting offense.*

    Section 1141, Code of 1906 (section 869, Hemingway's Code), by
    sufficient words defines the crime of embezzlement therein de-
    nounced, and therefore it is not necessary, in an indictment for

141 Miss.—19.

such crime, to set out the extrinsic facts constituting the offense.

4. EMBEZZLEMENT. *Indictment charging that accused had possession, by virtue of office, of money to amount named therein, held sufficient without setting out particular funds charged to have been embezzled.*

An indictment under section 1141, Code of 1906 (section 869, Hemingway's Code), charging that defendant, a public officer, had possession, by virtue of such office, money to an amount named in the indictment, the property of the county, is sufficient without setting out the particular funds charged to have been embezzled.

5. INDICTMENT AND INFORMATION. *State is not required to furnish bill of particulars in criminal prosecution; statute held not to require state to furnish bill of particulars in criminal prosecution.*

There is no authority of law for requiring the state to furnish a bill of particulars in a criminal prosecution. Section 763, Code of 1906 (section 546, Hemingway's Code), authorizing the court under certain conditions to require a bill of particulars, is confined to civil causes in the circuit courts, and has no application to criminal prosecutions. The indictment itself is the only bill of particulars required by law.

6. EMBEZZLEMENT. *In instructing jury for state, failure to charge that conversion of funds involved was done with intent to cheat and defraud held not error.*

In a prosecution for embezzlement under section 1141, Code of 1906 (section 869, Hemingway's Code), there was no error, instructing the jury for the state, in failing to charge the jury that the conversion of the funds involved was done with intent to cheat and defraud.

7. CRIMINAL LAW. *Continuances in discretion of court, and to secure reversal refusal must have amounted to abuse of discretion.*

Continuances are so largely within the discretion of the trial court that a request to grant a continuance is rarely a ground for reversal. There must have been an abuse of discretion on the part of the trial court to work a reversal.

8. CRIMINAL LAW. *Indictment and information. Variance between indictment and proof, to entitle accused to acquittal, must be harmful; if evidence shows accused has been informed of nature and cause of crime, variance between indictment and proof is harmless.*

It is not every variance between an indictment and the proof which entitles a defendant to an acquittal. The variance must be harmful to the defendant. Notwithstanding the variance, if it develops in the evidence that the defendant has been informed of the nature and cause of the crime which he is required to defend, then such variance is harmless.

9. EMBEZZLEMENT. *Evidence of embezzlement held to make case for jury.*

The evidence examined, and *held*, that it was a question for the jury whether the defendant was guilty of the crime charged:

ETHRIDGE, J., dissenting.

---

*Headnotes 1. Criminal Law, 16 C. J., Section 981 (Anno); 2. Embezzlement, 20 C. J., Section 68; 3. Indictments and Informations, 31 C. J., Section 267; 4. Embezzlement, 20 C. J., Section 70 (Anno); 5. Indictments and Informations, 31 C. J., Section 308; On sufficiency of indictment as affected by bill of particulars, see note in 10 A. L. R. 982; 14 R. C. L., p. 190; 3 R. C. L. Supp. 192; 4 R. C. L. Supp. 886; 5 R. C. L. Supp., p. 752. 6. Embezzlement, 20 C. J., Section 88 (Anno); 7. Criminal Law, 17 C. J., Section 3578; 8. Criminal Law, 17 C. J., Section 2626; Indictments and Informations, 31 C. J., Section 451; Variance between allegations and proof in indictment, 14 R. C. L. 206; 3 R. C. L. Supp. 196; 4 R. C. L. Supp. 887; 5 R. C. L. Supp. 754. 9. Embezzlement, 20 C. J., Section 85.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

W. P. Sanders was convicted of embezzlement, and he appeals. Affirmed.

*Everett & Forman,* for appellant.

I. The indictment shows on its face a false charge because it charges Sanders with being the duly elected, qualified and acting county superintendent of education on September 8, 1924, when the court takes judicial notice of the fact that he was not such an officer at that time. Therefore, being indicted as an official, that allegation in the indictment became material and, therefore, must be proved. If the court takes judicial notice

of the fact that C. T. Bookout was the county superintendent of education on September 8, 1924, then certainly the indictment against W. P. Sanders was bad. "The court takes judicial notice of the beginning and ending of the terms of public officers." *State* v. *Smith,* 87 Miss. 558; *Stubbs* v. *State,* 53 Miss. 437; *State* v. *Glennen et al.,* 93 Miss. 838; *McInnis* v. *State,* 97 Miss. 280.

II. The demurrer challenges the sufficiency of the indictment for the reason that it fails to allege that the money charged to have been embezzled with an intent to cheat and defraud the owner thereof or to injure some other person. 1 Bishop's Criminal Procedure, par. 42; 1 Chitty's Pleading, page 234; *State* v. *Murphy,* 86 So. 868, 124 Miss. 440. Nowhere in the indictment now before us does it charge him with intending and designing to cheat and defraud, though "Where the evil intention is necessary to constitute the act a crime, the intent must be alleged in the indictment." *Marmon* v. *State,* 24 Miss. 54; 9 R. C. L., page 1296, par. 42; *State* v. *Moyer,* 58 W. Va. 146.

III. The demurrer challenges the sufficiency of the indictment because it sets out no extrinsic facts which show a commission of a crime by the defendant, there being no sufficient words in the statute to define the offense of embezzlement. This indictment is returned under section 869, Hemingway's Code (section 1141, Code of 1906). Embezzlement is a statutory and not a common-law crime. *McInnis* v. *State,* 97 Miss. 280. Therefore, it is seen that to write an indictment simply in the language of the statute above quoted would charge nothing against any person, but in order to write an indictment for embezzlement under this statute, it is necessary for the pleader to employ such language in alleging extrinsic facts which will charge an offense under the statute, which does not undertake, in its language, to define the crime of embezzlement, leaving the necessary allegations charging the material facts constituting the

crime. to the pleader. In this indictment there is nothing to show where the money charged to have been embezzled came from. There is nothing to show that it belonged to Sunflower county. There is nothing to show that the appellant was by any official position charged with handling any of the funds of Sunflower county, and by the mere averment that he was county superintendent of education does not show that he was charged as such officer with the custody of any funds whatsoever. Therefore, it is necessary for the pleader to go further and to show by extrinsic facts incorporated into his indictment the whys and wherefores of his custody of funds and to show where they came from and to whom they belong. *Jesse* v. *State,* 28 Miss 100; *Sarah* v. *State,* 28 Miss. 267; *Harrington* v. *State,* 54 Miss. 494; *Rawls* v. *State,* 70 Miss. 739; *Sullivan* v. *State,* 67 Miss. 346; *State* v. *Southern R. R. Co.,* 112 Miss. 26; *Pruitt* v. *State,* 76 So. 761, 116 Miss. 33. See especially *State* v. *Howard,* 66 Minn. 309, 61 Am. St. Rep. 403.

IV. The court having overruled this demurrer the appellant then filed a motion to require the state to furnish to it a bill of particulars showing: (a) When the money came into his hands; (b) Where the money came from and how it came into his possession; (c) When, where and how the same was embezzled; and (d) By what authority said money came into his possession. This motion was heard and overruled by the court.

The indictment being bad, in our opinion, it was the duty of the state to furnish to the defendant this bill of particulars. *Pruitt* v. *State, supra.*

V. Instruction No. 5 tells the jury to convict the defendant irrespective of how he obtained the money or for what purpose it came into his hands and irrespective of a fraudulent intent to cheat and defraud. See *People* v. *Gordon,* 133 Cal. 328; *Taylor* v. *Commonwealth,* 25 Ky. Law 374; *State* v. *Regill,* 169 Mo. 659; *State* v. *Schild,* 159 Mo. 130.

VI.  When the state announced itself ready for trial in this case, the defendant asked for a continuance, which motion was based on the fact that the indictment did not show him what he had to meet in the way of proof, and the further fact that the district attorney stated only a few minutes before the trial started that he would rely upon the audit for his proof. We then wanted, and were entitled to, time to investigate the audit.. The court overruled this request and forced us to trial.  Being forced into trial without knowing what items would be claimed to be short until a witness was placed on the witness stand, the defendant had no opportunity whatever of examining the books of the depository with reference to any other accounts. There is no proof in the record to show that Sandlers ever appropriated a dime of this money to his own use. See *Bell* v. *State,* 110 Miss. 430, 70 So. 456. If he spent the money for school purposes, then there was no intent to embezzle and he cannot be convicted of embezzlement. If the evidence introduced by the prosecution is consistent with good faith on the part of the accused, there is no such intent to embezzle shown, as is necessary to convict. *State* v. *Wallick,* 87 Ia. 369; *State* v. *Cowdry,* 79 Minn. 94.

VII.  It was error to overrule the motion to exclude the testimony when the state rested and in overruling the motion to set aside the verdict made at the conclusion of the trial.  These two motions were based on the theory of a variance between the proof and the allegations of the indictment.  The indictment charges the funds to have been embezzled to be the funds of Sunflower county. "The title to the sixteenth section lands is in the state and not in the county."  *Jones* v. *Madison County,* 72 Miss. 799; *Jeff Davis County* v. *Lumber Co.,* 94 Miss. 530; *Robertson* v. *Monroe County,* 118 Miss. 522; Sec. 7511, Hemingway's Code, chapter 249, Laws of 1918. See, also, *Polkinghorne* v. *State,* 7 So. 347, and *Hampton* v. *State,* 54 So. 722.

An indictment laying the ownership of funds in Sunflower county cannot be sustained by proof that the funds charged to have been embezzled belonged to the heads of families of various townships in the county, especially where no title whatever to the property is in the county and the county being at best a co-trustee with the land commissioner of the state in the exercise of the control of the funds.

*J. L. Byrd,* Assistant Attorney-General, for the state.

I.   The first assignment is that the court erred in overruling the demurrer to the indictment.   To consider the indictment intelligently, see section 869, Hemingway's Code (section 1141, Code of 1906), under which it is drawn.   The first ground of demurrer is that the indictment avers that Sanders was on September 8, 1924, the duly qualified and acting superintendent of education of Sunflower county, Mississippi, when, as a matter of fact, the court takes judicial knowledge of the beginning and ending of terms of office of the various officers of the various counties; and that the court judicially knew that on September 8, 1924, one Bookout was superintendent of education of Sunflower county and not the defendant; and that, therefore, the charge was false; and being alleged to be an official, the charge became material.   We submit that the ground of demurrer is not well taken for the reason that the matter complained of could not be taken advantage of by demurrer, but is strictly a matter of defense.   If this was a defect, it is cured by section 1184, Hemingway's Code, which provides that any error in the allegation of time is immaterial.

II.   The further point is made that the indictment does not show why and when he received the money and by what authority.   This ground of demurrer is answered by the indictment itself.

III. The third ground is that the indictment fails to allege that the money charged to have been embezzled was so embezzled with the intent to cheat and defraud. The weight of authority is against the contention of appellant. 20 C. J. at page 475; *McInnis* v. *State,* 97 Miss. 280.

IV. The fifth ground of the demurrer challenges the sufficiency of the indictment because it sets out no extrinsic facts which show the commission of a crime by the defendant inasmuch as there are not sufficient words in the statute to define the offense of embezzlement. This ground is not well taken, for the indictment is in the exact language of the statute, charging the defendant with violating the statute in the exact terms of the statute. That is all that is ever required where the statute itself defines the crime and fixes the penalty. *McInnis* v. *State,* 97 Miss. 280.

V. Counsel further objects that the indictment does not charge where the money alleged to have been embezzled came from. It was not necessary to charge in the indictment where the money came from, because the statute says that any money which comes into his possession by virtue of his office, regardless of the source, and the allegation in the indictment that this particular money came into his possession by virtue of his office is entirely sufficient. Chapter 249, Laws of 1918, authorizes the superintendent of education to collect certain money, and it, therefore, appears that he was under a duty imposed by law to collect certain money and by virtue of his office the money came into his possession. The ownership is laid in Sunflower county, and this, of course, is sufficient on demurrer.

This indictment is a good indictment. It is in the language of the statute, and as was said by this court in *State* v. *Southern Ry. Co.,* 112, 23, "The language of which is so specific as to give notice of the act made unlawful, and so exclusive as to prevent its application to any other acts than those made unlawful."

VI.   The appellant next complains of the refusal of the court to require the state to furnish him a bill of particulars.   This is a matter which was entirely within the discretion of the trial court, who was better able to judge of the merits of the motion than any other person.   There does not appear to have been any abuse of this discretion, and there does not appear to have been any harm done to appellant by reason of the refusal. We submit that the Pruitt case cited by the appellant is not in point here, for it is barred on grounds that cannot arise in this case.   Besides, the evidence shows that the appellant was furnished with a copy of the audit on which the case was based and which contained each and every item of account on which the state depended for a conviction, this audit being furnished appellant at least three weeks before the case was tried; and he had ample opportunity to examine into each item which it was charged he had embezzled.

VII.   Instruction No. 5 is based on the statute, and in view of the authorities already cited, we submit that it was proper and pertinent to the case.

VIII.   As to the overruling of an informal motion for continuance made just as the case was begun, the court will note that it is merely an informal motion dictated to the stenographer and does not purport to comply with the statute or rules of procedure.   It was a matter in the sound discretion of the court and there is no evidence that the discretion of the court was abused in this instance or that the appellant was harmed at all by the overruling of the motion.

IX.   The last contention made in the brief for appellant is that there is a variance between the indictment and the proof in that the indictment charges that the money embezzled was the property of Sunflower county, when the evidence showed it to be sixteenth section funds and not the property of Sunflower county.   This

is not a variance and the charge that it was the property of Sunflower county was entirely proper and correct. The county, through its board of supervisors, superintendent of education and treasurer, is charged with collecting, accounting for, and paying out on order of the trustees, the funds belonging to the various sixteenth sections for the benefit of the schools of the section or the township. Section 7511, Hemingway's Code, and chapter 249, Laws of 1918. These two statutes make it the duty of counties to collect and care for these funds, and when they did collect it, Sunflower county was at least the nominal owner of the money. 20 C. J., page 466; *Sias* v. *State,* 89 Pac. 539.

The state proved its case beyond a reasonable doubt; the defendant had a fair and impartial trial; and the trial court committed no reversible error.

*Everett & Forman,* in reply, for appellant.

The demurrer alleges: "that the indictment fails to charge that the money was embezzled with *intent* to *cheat* and *defraud* the *owner* or to *deprive the owner* of the use thereof." We cite the following additional authorities: 9 R. C. L., 1264; 20 C. J. 433; *State* v. *Murphy,* 86 So. 868; 19 A. L. R. 297; *Smith* v. *State,* 107 Miss. 486. The indictment in this case could not be maintained under section 869, Hemingway's Code (section 1141, Code of 1906). See *Hemingway* v. *State,* 68 Miss. 403. See also *C. C. Smith* v. *State,* 107 Miss. 486.

Under the present indictment against the appellant, there is no *"intent to cheat and defraud the owner of the funds,"* or to deprive the owner thereof, charged in the indictment. Therefore, at best, the indictment could be held to charge only a misdemeanor and not a felony.

Argued orally by *Frank E. Everett,* for appellant, and *J. L. Byrd,* Assistant-Attorney-General, for the State.

ANDERSON, J., delivered the opinion of the court.

Appellant, W. P. Sanders, was indicted and convicted in the circuit court of Sunflower county, under section 1141, Code of 1906 (Hemingway's Code, section 869), of embezzling, while superintendent of education of Sunflowed county, seventeen thousand five hundred sixty-seven dollars and sixty-three cents of the funds belonging to said county, and was sentenced to the penitentiary for a term of five years, from which judgment he prosecutes this appeal.

Appellant was superintendent of education of Sunflower county for the years of 1917 to 1924, inclusive. Under chapter 249 of the Laws of 1918, it was made his duty as county superintendent of education to collect all rents due for the lease of sixteenth section school lands, as well as the principal and interest due on all loans made of such funds belonging to his county, and account for the same to the board of supervisors; and it was made the duty of the board of supervisors to have him turn all such funds over to the county treasurer, taking proper vouchers therefor.

Several assignments of error are made and argued by appellant. Only those we deem of sufficient merit will be considered. In the discussion of each we will undertake to make the necessary statement of the case out of which the particular question involved arises. The indictment against appellant, leaving out the formal parts, is in this language:

"That W. P. Sanders, late of the county aforesaid, on the 8th day of September, 1924, with force and arms, in the county aforesaid and within the jurisdiction of the court, he being then and there a duly elected, qualified, and acting superintendent of education in and for Sunflower county, state of Mississippi, did then have in his possession, by virtue of his said office, money to the amount of the value of seventeen thousand five hundred sixty-seven dollars and sixty-three cents, the property of Sunflower county, Miss., which said money had theretofore come into his (the said W. P. Sanders') hands and

possession by virtue of his said office, and afterwards did then and there feloniously embezzle said above-described money, and did then and there unlawfully, fraudulently, and feloniously convert the same to his own use, against the peace and dignity of the state of Mississippi.''

Appellant interposed a demurrer to the indictment, which was overruled. That action of the trial court is assigned as error. The indictment charges that the alleged embezzlement was committed by appellant on September 8, 1924, while he was county superintendent of Sunflower county. Appellant contends that the court will take judicial notice of the fact that appellant was not county superintendent of education on that date, but that one C. D. Bookout at that time held the office. The evidence in the case developed that, on the 8th day of September, 1924, appellant was not, in fact, superintendant of education of Sunflower county; that C. T. Bookout had been elected at his successor, and had taken office in January, 1924. It is true, as contended by appellant, that the courts take judicial notice of the beginning and ending of the terms of public officers. *Stubbs* v. *State,* 53 Miss. 437; *State* v. *Smith,* 87 Miss. 551, 40 So. 22. Appellant, however, does not cite any authority, and we know of none, holding that the courts take judicial notice as to what persons occupy the different offices of the state at any given time. We hold that such a fact must be proven by evidence in the customary way, that the courts will not take judicial notice thereof, and that the indictment in that respect was sufficient.

Appellant contends that the indictment failed to charge the crime of embezzlement, because there is an absence in the indictment of a charge that appellant embezzled the funds in question with intent to cheat and defraud Sunflower county. It is argued that there can be no embezzlement without such intent to cheat and defraud. Authorities are cited by appellant to the effect that, where an intent to cheat and defraud is necessary to constitute the crime charged , such intent must be alleged

in the indictment. They have no application, however, to the crime of embezzlement under the statute here involved. The statute is in this language:

"If any state officer or any county officer, or any officer in any district or subdivision of a county, or an officer of any city, town, or village, or a notary public, or any other person holding any public office or employment, or any executor, administrator, or guardians, or any trustee of an express trust, any master or commissioner or receiver, or any attorney at law or solicitor, or any bank or collecting agent, or other person engaged in like public employment, or any other person undertaking to act for others and intrusted by them with business of any kind, or with money, shall unlawfully convert to his own use any money or other valuable thing which comes to his hands or possession by virtue of his office or employment, or shall not, when lawfully required to turn over such money or deliver such thing, immediately do so according to his legal obligation, he shall, on conviction, be imprisoned in the penitentiary not more than twenty years, or be fined not more than one thousand dollars, or imprisoned in the county jail not more than one year."

It will be observed that, in defining the crime of embezzlement, denounced by this statute, there is an absence of any provision in the statute that there must be a purpose on the part of the defendant to cheat and defraud. Either an unlawful conversion to his own use of the funds intrusted to the defendant or a failure on his part to turn over such funds to the person lawfully entitled thereto, constitutes the crime, regardless of any intent to cheat and defraud.

The court gives the following definition of the meaning of this statute in the Hemingway Case, 68 Miss. 371, 8 So. 317:

"It is at once a collection law and a penal statute. Its terms show unmistakably that it was designed to prevent unlawful (not fraudulent and felonious) conversions by

officers, trustees, agents, attorneys, bankers and others, and to coerce the paying over immediately, when required to do so, according to the legal obligation of the ·offender. It was intended to punish the unlawful (not fraudulent and felonious) conversion and the not paying over immediately when required to do so.''

The court distinctly held in that case that it was not the fraudulent and felonious conversion that the statute was designed to prevent, but the unlawful conversion by public officers, trustees, etc. The unlawful conversion or the failure to turn over either constitutes the offense of embezzlement denounced by the statute. And this is true, regardless of any intent to cheat and defraud on the part of the defendant. See further, on this question, *McInnis* v. *State,* 97 Miss. 280, 52 So. 634.

It is contended by appellant that the indictment is insufficient because it charges the offense in substantially the language of the statute, that there are no sufficient words in the statute defining the offense charged, and therefore it was necessary for the extrinsic facts constituting the offense to be set out in the indictment. We are of the opinion that a complete answer to that contention is what the court said as to the purpose and meaning of this statute in the Hemingway case quoted above. Either simply an unlawful conversion or a failure to turn over is all that is necessary to constitute the crime. The indictment charges an unlawful conversion, not a conversion with intent to cheat and defraud, because, as held in the Hemingway case, that is not necessary.

Appellant contends that the demurrer to the indictment should have been sustained, because it fails to charge what specific funds were embezzled. The indict· ment charges that appellant had in his possession, by virtue of his office, money to the amount of seventeen thousand five hundred sixty-seven dollars and sixty-three cents, ''the property of Sunflower county, Miss.,'' which came into his hands by virtue of his office of county su-

perintendent. It is argued that the indictment should
have set out what specific funds were embezzled. It is
provided by section 1436, Code of 1906 (section 1192,
Hemingway's Code), in substance, that in all indictments
for larceny or embezzlement of money or evidences of
debt it shall be sufficient to describe the property in gen-
eral terms as—''Money, bank notes, checks, bill of ex-
change, promissory notes and the like, and in an indict-
ment for the embezzlement of funds by a treasurer, cash-
ier or other fiduciary, it shall be sufficient to describe
same as a balance of account and of a certain value.''

It is true the indictment in this case does not charge
specifically that the seventeen thousand five hundred six
ty-seven dollars and sixty-three cents, which appellant
was charged with embezzling, constituted a balance of ac-
count as between him and Sunflower county, but it
charges substantially the equivalent of that. The charge
in the indictment is that that amount came into his hands
by virtue of his office, which he unlawfully, fraudulently,
and feloniously converted to his own use. It was not
necessary to charge in the indictment the sources of the
different funds in appellant's custody as county superin-
tendent, if, in fact, there were funds coming from dif-
ferent sources. It was sufficient to put him on notice of
the nature and cause of the crime he was to meet to
charge as the indictment did, that so much funds came
into his hands by virtue of his office which he embezzled.

Appellant argues that the court committed a grievous
error against him in overruling his motion for a bill of
particulars. There is no authority of law for the fur-
nishing of a bill of particulars in a criminal case. Sec-
tion 763, Code of 1906 (Hemingway's Code, section 546),
authorizing the court under certain conditions to require
a bill of particulars is confined to civil cases in the cir-
cuit courts, and has no application to criminal prosecu-
tions. The indictment itself is the only bill of particu-
lars required by law. And, as we have stated, the indict-
ment in this case sets out the crime charged with sufficient

particularity to put appellant on notice of the nature and cause of the offense charged against him.

Appellant contends that the court erred in giving instruction No. 4 for the state in this language:

"The court instructs the jury for the state that in a prosecution for embezzlement it is not necessary to make out the case of embezzlement for the state to prove that the defendant unlawfully, willfully, and feloniously converted the exact amount of money set out in the indictment, and that, if you believe from the evidence in this case beyond every reasonable doubt that the defendant, W. P. Sanders, while serving as county superintendent of education of Sunflower county, Miss., unlawfully, willfully, and feloniously embezzled the amount of money set out in the indictment, or any amount in excess of twenty-five dollars, then he is guilty as charged, and it will be your sworn duty to so find."

It is argued that the instruction is defective, because the jury were thereby directed to find appellant guilty, regardless of whether an intent to cheat and defraud was shown by the evidence. This question has been passed on in determining the sufficiency of the indictment. The indictment charges that appellant unlawfully, feloniously, and fraudulently converted the funds to his own use. That is sufficient. The state was not required to go beyond the averments of the indictment with its proof.

Appellant's motion for a continuance, was overruled. He assigns this as error. The motion was based on the theory that the indictment against appellant failed to sufficiently inform him of the nature and cause of the charge against him and that appellant was entitled to time in which to investigate the correctness of the audit handed his attorney before going into the trial, which audit the state largely relied on for conviction. The granting of continuances is so largely within the discretion of the trial court that a refusal to grant a continuance is very rarely a ground for reversal. There

must be an abuse of discretion on the part of the trial court to work a reversal. In view of the developments on the trial of this case, it is apparent that the court committed no error in overruling appellant's motion to continue. Appellant, as a witness in his own behalf, admitted substantially the truth of every item of the audit charged against him, as well as the showing therein that he had failed to report a large part of the sixteenth section funds coming into his hands to the board of supervisors, and pay same into the county treasury as required by the statute. The audit therefore contained no surprises to appellant. He practically confessed the truth of it, and undertook to justify his conduct under the law in failing to comply with the statute, as will be shown hereafter in considering another ground of alleged error.

Appellant urges that the court should have directed a verdict of not guilty as requested by him; that this instruction should have been given, among other reasons, because the indictment charged the crime to have been committed on September 8, 1924, while the evidence showed that at that time appellant had ceased to be county superintendent, and that the misappropriation of the funds took place during his term of office, which expired with the year 1923. There was in fact, therefore, a variance in that respect between the date of the offense as charged in the indictment and the date shown by the evidence. This variance, however, was without any harm whatever to appellant. He was not thereby deceived or misled in any manner to his hurt. Before going into the trial he was handed by the district attorney, as stated before, a complete audit made by an expert accountant, and introduced in evidence on the trial, showing every debit and credit of the sixteenth section funds which in any manner had any bearing whatever on appellant's guilt. He knew by that audit that he was expected to meet a charge of embezzlement of these funds by him during his term of office; and furthermore he

141 Miss.—20.

was informed of every item of these funds which the
state would undertake to prove had come into his hands,
the date received by him, as well as all items and their
dates accounted for by him according to the statute.
Furthermore, as above stated, appellant, as a witness
in his own behalf, practically admitted the truth of that
audit, and undertook to justify his course in failing to
report these funds to the board of supervisors and turn
them in to the county treasurer as required by law. It
is not every variance between an indictment and the
evidence that is harmful to a defendant. If it develops
in the evidence that the defendant is informed of exactly
the time of the commission of the alleged offense, and
prepares his defense accordingly, a variance between the
time alleged in the indictment and the time shown by
the evidence is without harm to the defendant. That was
the case here.

It is argued by appellant that he was entitled to a di-
rected verdict of not guilty, because the evidence showed
that he had not in truth and in fact appropriated these
sixteenth section funds to his own use. The testimony
on this question was principally by appellant himself.
In brief, he stated substantially these facts: That it
was true that as to a large amount of these sixteenth sec-
tion funds, coming into his custody during his two terms
as county superintendent, he did not comply with the
statute, in that he failed to report same to the board of
supervisors and turn them over on the order of the board
to the county treasurer; that nevertheless he had not
appropriated these funds to his own use; that instead
he had placed them to his individual credit in one or
more banks, and drawn them out on his individual checks
in payment of teachers' salaries and other expenses of
the public schools of Sunflower county to which such
funds are devoted by law; that, in other words, he had
accomplished the same result that would have been ac-
complished if the funds had been reported to the board
of supervisors and turned into the county treasury by

him on the order of the board. Appellant admitted that he had kept no books and records covering the receipt and disbursement of these funds, and that, when he went out of office, he did not turn over to his successor any of these funds. In his testimony he undertook to go into details of the different amounts he had paid out of these funds for the benefit of the public schools of the county. Conceding alone, for the sake of argument, the soundness of appellant's position in that respect, still in many respects his testimony was so indefinite and uncertain that it was a question for the jury whether he had disbursed the funds as he contended had been done. In at least two instructions given for appellant the jury were told, in substance, that, if they believed from the evidence that appellant paid out these funds which he had failed to report and pay into the county treasury as required by statute, for the benefit of the public schools of Sunflower county, they should find appellant not guilty, or, if they had a reasonable doubt of that fact, they would so find. Without deciding the question as to whether these instructions should have been given, it is apparent that they were most favorable to appellant. By them his good faith as well as the question whether he had appropriated the funds to his own use were squarely submitted to the jury, and the jury found against him. In other words, the jury found that he appropriated and used a part of these funds for his own personal benefit.

We do not deem it necessary to discuss the other errors assigned. It is apparent they have no merit. So far as this record shows, appellant has had a fair and impartial trial according to the evidence and the law of the land. A jury of his county has found him guilty, and in our judgment that finding was not influenced by any error which may have been committed during the trial of the case.

*Affirmed.*

ETHRIDGE, J. (dissenting).

I think the indictment set out in the majority opinion is fatally defective, in that it fails to comply with section 26 of the state Constitution. I am unwilling to trim down the section of the Constitution, and think it should be given its full meaning and effect. It is of the utmost importance that a person accused of crime be informed of the nature and cause of the accusation against him. The indictment should not deal in generalities, but must descend to particulars and give specific information to the accused of precisely the acts that he is charged with having committed, so that he may judge, and, judging, question the sufficiency of the indictment and the legality or illegality of the charge against him.

The present case and the statute under which the appellant is indicted demonstrate the necessity of a specification in the indictment of the particular things that constitute the crime. The statute is set out in the majority opinion, and it will be seen from a reading of the statute that, like charity, it covers a multitude of sins. These crimes vary greatly in details and facts, and, where the person is indicted for a violation of the statute, the particular facts constituting such violation should be set forth with certainty and particularity. Let us get certain principles fixed in mind which are required by section 26 of the Constitution as construed by the decisions of this court and the United States courts dealing with a similar provision in the federal Constitution.

In *Murphy* v. *State,* 24 Miss. 590, referring to the constitutional provision embodied in the present section 26 of the Constitution, the court said:

"The constitutional provision, that every man charged with a crime has a right 'to demand the nature and cause of the accusation against him,' was intended to secure to the accused such a specific designation of the offense laid to his charge, as would enable him to make every preparation for his trial necessary to his full and complete defense. We therefore think that under it the accused is entitled to demand 'such a certain description

of the offense charged, and statement of the facts by
which it is constituted, as will fully identify the accusa-
tion, lest the grand jury should find a bill for one offense,
and the defendant be put upon his trial for another, with-
out any authority; and also that the defendant may know
what crime he is called upon to answer, in order that he
may be prepared with his evidence, and that his convic-
tion or acquittal may insure his subsequent protection,
should he again be questioned on the same ground; and
that he may be enabled to plead a previous conviction
or acquittal of the same offense in bar of any subsequent
proceedings against him.'

"The indictment ought, in our opinion, to describe and
identify the offense with such a degree of certainty that
the accused and the court may know, that the offense for
which he is put upon his trial, is the same offense with
that for which he stands indicted, in order that he may
plead in bar a previous conviction or acquittal. An
indictment which does not contain this degree of cer-
tainty does not communicate to the accused 'the nature
and cause of the accusation' against him, in the manner
contemplated and designed by the bill of rights. Nor
has the legislature the power to dispense with such a
degree of certainty in indictments."

In *Riggs* v. *State,* 26 Miss. 51, at page 54, the court
said: "The description of the act with which the pris-
oner is charged as a felony is contained in the following
averment, to-wit: 'That the said James Riggs, with a
certain knife which he then and there in his right hand
had and held, the said Joel E. Hunt, in and upon the right
shoulder, and in and upon the right side of the body, and
in and upon the right side of the belly of him, the
said Joel E. Hunt, then and there feloniously, willfully,
and of his malice aforethought, did strike and thrust,
giving to the said Joel E. Hunt, etc., the mortal wounds,
etc., of which said mortal wounds the said Hunt did
then and there languish, and languishing did live for
the space of about twenty hours, and did then die.'

"Every valid charge for murder necessarily contains three distinct propositions: (1) That the person slain was murdered; (2) that the party charged perpetrated the deed; and (3) that the felony was committed within the county where the indictment is found. In the indictment before us, it is seen that no averment of place is affixed to the time when the subject of the alleged murder is stated to have died. After the reception of the wounds which caused his death, he 'languishing did live for the space of about twenty hours, and then did die.' It is manifest, that, tested by the rule above laid down, this averment is insufficient. The fact that the murdered party did not die within the county of Monroe is not necessarily excluded, or rather it does not appear by direct averment and with certainty, that he died within that county. This fact it was indispensable that the indictment should aver. For although the mortal wound may have been there inflicted, if the death in fact occurred in another county, by express statutory provision the circuit court of Monroe had no jurisdiction of the offense."

In *Norris* v. *State,* 33 Miss. 373, in the first syllabus, the rule is announced as follows: "Under the Constitution, 'in all criminal prosecutions, the accused hath the right to demand the nature and cause of the accusation' against him. And this right, so secured, requires that the facts which constitute the alleged crime should be stated in the indictment with sufficient certainty, to enable the accused to know with what offense he is charged, and to prepare for his defense, both by a plea of not guilty and of former acquittal, or conviction."

In this Norris case, at pages 375, 376, the court said: "The question, therefore, is not whether the testimony establishes an offense bringing the defendant within the provisions of the statute, but whether the indictment sufficiently charges him with the commission of such offense; for, if not, it matters not how clear the proof may have been, it could not, under any just rule, estab-

lish more than the indictment itself charges.   An indictment for a larceny committed in the county of Madison, in this state, in the usual form, and containing only the usual averments of such an indictment, wholly fails to give the defendant the least notice of an offense against the statute above quoted; for, to constitute an offense against the statute, there must be both a stealing of the property in another state or country, and a bringing of it into this state; and these facts, both being necessary to constitute the offense, must be sufficiently set forth in the indictment, in order not only to conform to a well-established rule of pleading, that the facts which constitute the crime or cause of action must be alleged with sufficient certainty, but that the accused may know what it is that he is called on to answer, so that he may prepare for his defense accordingly.   Such, certainly, is the spirit of the Constitution, and the right which it intended to secure to the accused in criminal prosecutions, when it declares that 'he hath the right to demand the nature and cause of the accusation' against him.

"The government, in ingrafting this provision upon its organic law, did not, as is by some erroneously supposed, proceed upon a principle of tenderness for those actually guilty of crime, but upon a more wise and humane principle, sanctioned by the experience of ages, that an innocent person may be unjustly accused of crime, and to effect him an ample opportunity when so accused to vindicate his innocence. If the government could be absolutely assured that none but the really guilty, would ever be put upon their trial for crime, it would perhaps not trouble itself to prescribe rules to govern such trials; but, as this is utterly impossible, it must act upon the principle, as far as possible, of protecting the innocent and punishing only the guilty; and almost all the rules which govern courts on the trials of criminal prosecutions, have their origin in this principle.

"The object is not to screen the guilty, but to protect the innocent; and, by departing from a rule supported

by the clearest dictates of reason, while it may be true that the guilty will but seldom, if ever, escape punishment, yet it may be equally true that the innocent may, with almost equal facility, in many cases, be convicted, and unjustly suffer a punishment, designed by the law for criminals only.''

See, also, *Newcomb* v. *State,* 37 Miss. 383; *Williams* v. *State,* 42 Miss. 328; *Riley* v. *State,* 43 Miss. 397; *Thompson* v. *State,* 51 Miss. 353.

The supreme court of the United States, in *United States* v. *Simmons,* 96 U. S. 360, 362, 24 L. Ed. 819, at page 820, said: ''Where the offense is purely statutory, having no relation to the common law, it is, 'as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter.' 1 Bishop, Crim. Proc., section 611, and authorities there cited. But to this general rule there is the qualification fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to any subsequent prosecution for the same offense. An indictment not so framed is defective, although it may follow the language of the statute. Tested by these rules, the second count is insufficient. Since the defendant was not charged with using the still, boiler, and other vessels himself, but only with causing and procuring some one else to use them, the name of that person should have been given. It was neither impracticable nor unreasonably difficult to have done so. If the name of such person was unknown to the grand jurors, that fact should have been stated in the indictment.''

In *United States* v. *Garll,* 105 U. S. 611, 26 L. Ed. 1135, the court, speaking through Mr. Justice GRAY, said: ''In an indictment upon a statute, it is not sufficient to set

forth the offense in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent.     *U. S.* v. *Cruickshank,* 92 U. S. 542 [23 L. Ed. 588], *U. S.* v. *Simmons,* 96 U. S. 360 [24 L. Ed. 819]," and other cases cited.

See, also, *Cannon* v. *U. S.,* 116 U. S. 55, 6 S. Ct. 278, 29 L. Ed. 561.

In *Pruitt* v. *State,* 116 Miss. 33, 76 So. 761, it was held that an indictment under section 1309, Code of 1906 (Hemingway's Code, section 1042), which charged the offense in the language of the statute, was not sufficient, and that it was necessary for the indictment to set out the particular duty which the defendant was called upon to perform while intoxicated.     At page 39 of 116 Miss. (76 So. 762) the court said:

"It is contended by the state that the indictment is sufficient, as it follows the language of the statute, and that, furthermore, the bill of particulars supplied the defect, if any, in the indictment.     This contention cannot be upheld, as it is well settled in law in this state that the indictment must go further than the language of the statute where it is necessary to charge the facts in order to inform the accused of the nature and cause of the accusation.     It clearly appears that the language of the statute here in question is such as to make it necessary for the indictment to definitely set out the facts sufficiently to inform the accused of the specific offense charged, so that he may properly prepare his defense thereto and be able to successfully plead former jeopardy."

The language of the statute there involved is as follows: "Any officer who shall be guilty of habitual drunkenness, or who shall be drunk while in the actual discharge of the duties of his office, or when called on to perform them, may be indicted therefor, and, upon conviction, shall be removed from office."

The indictment there charged: "That W. A. Pruitt, on the 26th day of February, 1917, in the county and district aforesaid, was the duly elected, qualified, and acting constable of justice of the peace beat No. 2 in said county, and, holding such office, was called upon to perform the duties thereof, and when so called upon was then and there unlawfully drunk, against the peace and dignity of the state of Mississippi."

The same principles have been announced in the cases of *Jesse* v. *State,* 28 Miss. 100; *Sarah* v. *State,* 28 Miss. 267, 61 Am. Dec. 544; *Harrington* v. *State,* 54 Miss. 490; *Rawls* v. *State,* 70 Miss. 739, 12 So. 584; *Sullivan* v. *State,* 67 Miss. 346, 7 So. 275; *State* v. *Southern Railway,* 112 Miss. 23, 72 So. 837.

Tested by these principles, the indictment in the present case is wholly insufficient.

The indictment was demurred to on a number of grounds, among which were: That the indictment does not advise the defendant of the time or place when he is charged with having committed the crime of embezzlement; that it failed to allege that the money charged to have been embezzled, with an intent to keep and defraud the owner, or to injure some other person, or to benefit the defendant, or with an intent to cheat and defraud some other person, with a necessary element of the crime of embezzlement; another, that the indictment alleges no facts or circumstances which charge a commission of the crime by the defendant, there being no sufficient words in the statute to define the offense of embezzlement; another, that the indictment does not advise the defendant of the nature of the crime charged against him.

It will be seen that the indictment charges the appellant on a particular day with the embezzlement; he being charged then and there to be a duly qualified and elected acting superintendent of education of the county, and did then have in his possession, by virtue of his office, moneys to the amount and value of seventeen thousand five hundred sixty-seven dollars and sixty-three cents, the property of Sunflower county, Miss., which said money had theretofore come into his hands, no term of office being set forth and no period of time within which the money was collected, and no persons from whom collected, and no specification of the various kinds of county funds which had been collected. It is then charged that afterwards he did then and there feloniously embezzle said money, and unlawfully and fraudulently and feloniously convert the same to his own use. As there are various moneys from various funds that come into the county superintendent of education's hands or custody, or may do so, it was highly important to both him and to the ends of justice that some particular act be charged against him. In other words, the charge is most general as to time and amount. It is charged that he embezzled funds on the 8th day of September, 1924. There was no pretense in the trial that this was true. Indeed all the proof shows that he was not then county superintendent of education of Sunflower county, nor any other county officer. The court judicially knows that the term of county officers, including the superintendent of education, begins on the first Monday of January, 1924, and during the trial there was no pretense that the appellant was at any time from and after the first Monday in January, 1924, superintendent of education, or that he had any funds intrusted to him during that time, and it would have been a sufficient defense to have shown the fact that he was not an officer at such time. Time is of the essence of the offense in this case, because the very thing that makes it a crime at all under the branch of the statute under which he was indicted is that he was then a public officer.

In *Hodnett* v. *State,* 66 Miss. 26, 5 So. 518, it was held that the essence of an offense is some essential element or constituent without which it would not be an offense.

It is manifest that the prosecution must have failed without proof that appellant was a superintendent of education as alleged. It certainly could not be contended that he could be charged with being a public officer and with having received funds in that capacity, and tried and convicted for being a mere agent, intrusted with money. So the time, which is laid in the indictment, when he was a public officer, is the very essence of the offense here charged against appellant. It would, of course, have been permissible to have charged in the indictment that he was a public officer and county superintendent from January 1, 1917, to the date of the indictment, but some period of time must be specified, and the state, having elected to specify a particular date and not to cover a full term, will be held to the time alleged in the indictment. The particular funds ought to have been charged in the indictment, and the persons from whom received should have also been charged.

It is wholly unfair to make a person run the gauntlet of a series of years and of possible funds which he may have handled without any kind of specification. Manifestly a person, having nothing but the indictment to afford him information, could not prepare effectively for such a trial, and the indictment must give the information which is needed for that purpose. Is it possible that the law contemplates that a charge may be laid on a given date, and the accused be confronted with every day anterior thereto when he may have held office? Let it be noted that the indictment does not undertake to charge, as it might have done, that the appellant kept books and was required to keep them, and that such books showed a shortage of the given amount, being a book balance, or general balance of moneys collected as shown by the books and not paid in. Where no books are relied upon, and where the alleged embezzlements

are funds that have not been entered on the books, it is necessary to specify the particulars as to funds, persons, and places.

The appellant was not indicted for failure to pay over to his successor funds under section 1142, Code of 1906 (Hemingway's Code, section 870), nor under section 1143, Code of 1906 (Hemingway's Code, section 871), nor under section 1144, Code of 1906 (Hemingway's Code, section 872). The state elected to charge a particular charge, to-wit, the conversion to his own use of moneys in his possession as an officer on a given date, and this indictment does not comply with the requirements of criminal pleading. It is too vague and uncertain and indefinite and general to comply with the standards of the Constitution. It does not allege a fraudulent intent to deprive the owner of the funds, and this it must do because the fraudulent intent is the very essence of the crime of embezzlement in the indictment. Of course, under another section above referred to, the failure to pay over to a successor at the expiration of his term of office is made a crime by statute. The mere failure to pay at that time is the gist of the offense, but the appellant is not indicted for that crime, and his conviction of the present crime attempted to be charged could not be pleaded in bar of a prosecution under any of the other sections referred to. The appellant could have been indicted for failure to keep a correct set of books, but he was not indicted for that offense, and the present prosecution did not answer a prosecution for such failure.

In 9 R. C. L., p. 1277, under the subject of "Embezzlement," subhead "Intent," in section 19, it is said:

"In the case of embezzlement, as in other crimes, a criminal intent is necessary. The defendant must have acted with felonious intent, and made an intentionally wrong disposal of the property, indicating a design to cheat and deceive the owner. Accordingly, the mere detention of money belonging to another, without a fraudulent intent to deprive that other of his property, does

not, it has been held, constitute embezzlement; or the mere voluntary doing of an act, the unexpected consequence of which is to deprive the owner of his property, there being no intention that the act shall have such results, cannot constitute the crime. Furthermore, the felonious intent must exist at the time of the appropriation.''

The case of *State v. Jones,* 102 Miss. 89, 58 So. 782, shows the correctness of my position. In that case Jones was indicted for embezzling under an indictment charging that he was president of the board of supervisors of Lincoln county, and, being such, that he received a sum of money from a named person for a fine and costs due the county by another person, which fine had been legally imposed and was a debt due the county when paid the defendant, and that said money was paid defendant for the county, and defendant did unlawfully and willfully and feloniously embezzle said money, the property of the county, and did convert said money to his own use, with intent to cheat and defraud the said county. It was held that this was not sufficient to charge a violation of the statute; it being the same statute involved in the present case.

What was said in the *Hemingway case,* 68 Miss. 371, 8 So. 317, with reference to the statute here involved, is not authority because the court expressly held that the indictment in that case did not fall under this statute, but fell under section 1144, Code of 1906 (Hemingway's Code, section 872), which was the same statute there involved, and which was construed in that case. What the court says about a statute not before it for construction of course is not authority. It is manifest, from a reading of the Hemingway case, that the court was proceeding upon the idea that the books of the defendant, kept by himself and under his direction, showed the commission of the crime. Furthermore, the indictment in that case expressly charged a fraudulent intent, and no part of the comment of the court upon the statute here

involved is authority, and it is manifestly unsound as an expression of legal theory. Of course, if the decision were authority, then the statute would carry the construction there placed upon it, but it could not be authority because the indictment charged fraudulent intent, and the court held that the indictment was not predicated upon the statute here involved. The expression of this Hemingway case was also quoted in the *McInnis case,* 97 Miss. 280, 52 So. 634, but in that case the indictment there involved was in two counts, each of which charged the embezzlement to have been done with a fraudulent intent and for the purpose of cheating and defrauding the owner of the property. These cases are referred to in the majority opinion in the present case as authority for this holding, but this is the first judicial decision of the question, and is manifestly unsound.

Practically every indictment involving a violation of the section here under review has charged the fraudulent intent to deprive the owner of his property.

Under a statute like the one before us, it is of course possible and permissible to charge the doing of the one thing and the other embracing a number of things denounced by statute in an indictment, and, where that is done, the proof of one offense will sustain the indictment, under the doctrine announced in *Coleman* v. *State,* 94 Miss. 860, 48 So. 181, and *State* v. *Clark,* 97 Miss. 806, 52 So. 691, wherein it is held that, where a statute makes it a crime to do one thing or another, and the person by one act does both of them or all of them, he violates the statute but once, and an indictment thereunder may charge in a second count that defendant was doing both, the conviction will be authorized by the establishment by the evidence of the violation of either. But I have never heard yet that the court could charge a person with one crime only, and, convict him of a different thing from that for which he was indicted, even though the defendant's acts are made crimes in the same statute. Each act charged as being an offense in such cases must be

sufficiently charged to give the information required by the Constitution. The person must be put on notice of what the state is going to try him for. He cannot be charged with one thing under an indictment and tried for another without violating the Constitution, as shown by the authorities referred to in the opening of this opinion.

I am therefore of the opinion that the demurrer to the indictment should have been sustained. It was, however, overruled, and the defendant thereupon made a motion for a bill of particulars, desiring to be informed of the time, places, persons, and funds involved in the charge. This motion was overruled by the court, and the majority opinion holds that the court was not in error in so doing.

A bill of particulars is often necessary in a trial of a cause for the protection of the rights of the parties and the limiting of the evidence with reference thereto, and should be granted in all cases where the charge or pleadings are general.

In 3 Ency. Pl. & Pr., p. 523, it is said: "Independently of statutory provisions, the court may direct a bill of particulars of the claim of either party to be delivered to the adverse party, to enable him to prepare his pleadings and evidence for the real issue. A bill of particulars is appropriate in all descriptions of actions where the circumstances are such that justice demands that a party should be apprised of the nature and extent of the claim set up against him with greater particularity than is required by the rules of pleading. There is no inflexible rule as to the classes of cases in which a bill of particulars will be granted, but it rests within the sound judicial discretion of the court, to be exercised only in furtherance of justice."

Of course, the judicial discretion is not arbitrary, but should be exercised in the furtherance of justice according to the circumstances involved in the pleadings and issues.

Section 763, Code of 1906 (Hemingway's Code, section 546), reads as follows: "If the pleading in any case be in vague and general terms, or does not specify the circumstances or the occasions on which the pleader relies, and the opposite party satisfy the court, by affidavit, that for the purpose of prosecution or defense at the trial it is necessary that his adversary be more specific, the court may order a bill of particulars to be rendered, specifying time, place, and circumstances relied upon, and persons present, or in case of contractual demands, more particularly itemizing the claim; and thereafter on the trial evidence shall not be admissible of matters not so specified."

The language in this section is general and does not limit the action to any particular class of suits. It is under the chapter on circuit courts, and by section 687, Code of 1906 (Hemingway's Code, section 465), it is provided: "All things contained in this chapter, not restricted by their nature or by express provision to particular courts, shall be the rules of decision and proceeding in all courts whatsoever."

It is true that our court in *Westbrooks* v. *State,* 76 Miss. 710, 25 So. 491, held that a bill of particulars under this statute did not apply to criminal cases, but that does not prevent the common-law rule being applicable to criminal cases. The statute does not mandatorily confer any rights in criminal cases, but it is discretionary with the courts, and should be exercised in the interest of fairness and justice, whenever and wherever the circumstances of the charge or case make it the fair thing to do. It seems to me, however, that the decision of the Westbrooks case "stuck in the bark," so to speak. At common law, in cases of barratry and other offenses general in their nature, such as being a common barrator, a common scold, and a common vagrant, a bill of particulars was necessary and proper. The principles involved were that, whenever the charge was general (that is, too general to give specific information), a bill of par-

141  Miss.—21.

ticulars was granted, and it certainly ought to be applied to that class of statutory offenses which are general in their nature.

It is true the indictment ought to be specific enough to give information of the cause and nature of the accusation, but the bill of particulars would be useful and proper in many cases to guard against excessive expense in preparing against possible evidence from a great number of diverse persons, circumstances, and things of that kind. Other courts, including the United States supreme court, require bills of particulars in proper cases, even in criminal cases. The cases are collected in the American Digest, First and Second Decennial Edition, title "Indictment and Information," Key No. 121; Cent. Dig. title "Indictment," sections 316-320.

In *Kirby* v. *United States,* 174 U. S. 47, 19 S. Ct. 574, 43 L. Ed. 890, the United States supreme court held that, if it appears at the trial to be essential in the preparation of the defense to an indictment for receiving stolen property, that the defendant should know the name of the person by whom the government intends to prove from whom the property was received, the court may require the prosecution to give a bill of particulars.

In *Thalheim* v. *State,* 38 Fla. 169, 20 So. 938, it was held that, where an indictment for embezzlement alleges the offense in a general way, as permitted by Revised Statutes, section 2897, a bill of particulars should be furnished the defendant; that, where an indictment is so general as to give defendant inadequate notice of the charge, the court may, on his application, independent of statute, require the prosecution to furnish a bill of particulars.

In *Sullivan* v. *People,* 108 Ill. App. 328, it was held that, if an indictment for conspiracy is in mere general forms, not charging overt acts, the course is to order a specification of the particulars, it being within the discretion of the court whether to grant it or not, its refusal cannot be held to be reversible error.

In *New Orleans* v. *Chappuis,* 105 La. 179, 29 So. 721, the Louisiana court held that, where the nature of an of-

fense charged is general, the court may require the prosecuting officer to furnish accused a bill of particulars showing the particular facts relied on.

In *State* v. *Maloney,* 115 La. 498, 39 So. 539, it was held that, where the parties are indicted under a statute very general in its terms, they may obtain relief by requiring a bill of particulars of the charge against them.

In *People* v. *Jaehne,* 4 N. Y. Cr. R. 161, it was held that it is only when the indictment is so general as to give accused inadequate notice of the charge he is expected to meet that he is entitled to a bill of particulars.

It is true that, when the defendant asked for a bill of particulars, and the court overruled the motion, the district attorney stated that he would rely upon the report of an audit of Sunflower county, Miss., and that the defendant had been furnished with a copy of this report. This audit consists largely of figures and items, including receipt warrant numbers, and names of persons who had dealt with sixteenth section lands. The book contains eighty-four pages; many of the pages being double pages, and practically all filled with matters of account. The defendant then requested a continuance until he could examine the report, which continuance was refused. The state relied largely upon proof of payments of sixteenth section moneys to the appellant while he was superintendent of education of Sunflower county, and the failure of the appellant to pay the funds so received into the county depository, and proved some admissions by the defendant that certain amounts were collected and not paid in. The defendant undertook to prove that he applied all the funds received by him, which were not paid in to the county depository, to various public schools and to various contracts for building and equipping schools and to municipalities entitled to share in such funds. He testified that he had not converted the county's funds to his own use, and that he had applied the funds which had passed through his hands to the public institutions of the county. He was unable on examination to produce all the checks which he had given against the funds. He

testified that he placed the public funds in the bank with his private funds in one account, and that he did not have time to locate all of the checks, and could not account specifically for some of the funds.

The statute under which the superintendent of education acted in collecting these funds is chapter 170, Hemingway's Supp. of 1921, sections 7530a to 7530s, being chapter 177, Laws of 1918, and section 7530i thereof, provides:

"It shall be the duty of the county superintendent of education to collect all rents due for the lease of sixteenth section school lands, and all interest and principal due on loans made out of the sixteenth section school funds of this county, and to account for the same to the board of supervisors. That the board of supervisors shall turn all such funds over to the county treasurer, taking the usual vouchers therefor, and see that funds of each sixteenth section is properly credited to it; provided that all evidences of indebtedness shall include a provision for the payment of ten per cent. attorney's fees in case of default."

It will be seen from this chapter and sections that it is the duty of the county superintendent of education to collect the rents due from the lease of sixteenth section school lands, and for all interest and principal due on loans made from sixteenth section school funds in his county, and to account for the same to the board of supervisors. That the board of supervisors shall turn over all such funds to the county treasurer, taking the usual vouchers therefor, and see that funds of each sixteenth section are properly credited to it. It will be seen that the statute does not make it the duty of the superintendent of education to put these funds in the county depository, or to apply them to the several townships, but his duty is to account to the board of supervisors.

The state failed to make any proof as to any failure to report to the board of supervisors and to account for such funds to such board. It proceeded upon the idea that, when the accused failed to pay the funds into the county

depository, he was guilty of embezzlement, or at least that it devolved upon him to exonerate himself. It proceeded also upon the idea that, if he deposited the funds in a bank other than a depository of the county in his personal name, he was guilty of embezzlement.

Of course, the county superintendent of education ought not to have placed these funds to his own account, nor mingled them with his own funds, but I think that, of itself, would not make him guilty of embezzlement. If he deposited them in a bank with the *bona fide* intention of applying them to the proper public purpose, and did not intend to use them for his personal use, he would not be guilty.

There is no proof of any demand by the board of supervisors for a settlement with the appellant, nor is he indicted for a failure to make settlement with the board.

In *Lincoln County* v. *Green,* 111 Miss. 32, 71 So. 171, it was held that a superintendent is not liable to suit for funds which he had in good faith applied to public purposes and not to his own use, although he may have applied some of the funds in violation of law. It was held that the superintendent of education was vested with some discretion of a judicial nature about applying funds intrusted to him, and that he was not liable for an error in judgment when exercising such discretion. The court quoted from United States supreme court in the case of *Kendall* v. *Stokes,* 3 How. 87, 11 L. Ed. 506, as follows:

"A public officer is not liable to an action if he falls into error in a case where the act to be done is not merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion, even although an individual may suffer by his mistake. A contrary principle would indeed be pregnant with the greatest mischiefs."

Our court then said (111 Miss. page 35 [71 So. 172]): "It will be borne in mind that the several matters complained of in the instant case were items of business within the jurisdiction of the county superintendent, and the services charged to have been illegally paid for were

services inuring to the benefit of the county, and not to
Mr. Green; and the payments actually made were, in the
language of Judge CAMPBELL, in reference to 'objects for
which an appropriation of money is authorized.' The
superintendent is vested with both executive and judicial
powers, and the efficiency of the public school system
requires that large administrative powers be vested in
him. In view of the fact, therefore, that the work paid
for by the superintendent and the several alleged ir-
regularities were within the jurisdiction of his office and
no corruption is charged, the bill fails to state a cause
of action.''

It seems that what Mr. Green was held not responsible
for civilly in that case, in the present case is adjudged a
felony in another county superintendent acting largely
in the same way, and he is sentenced to five years in the
penitentiary.

I desire to make a few observations upon the theories
embodied in some of the instructions.

It will be noted from a reading of the instructions that
the time in which the alleged embezzlements took place
was not limited to periods within two years from the
finding of the indictment. The first instruction told the
jury that on or after the 28th day of March, 1918, it be-
came the duty of the county superintendent of education
to collect rents due on sixteenth section lands, and to ac-
count for the same to the board of supervisors. In an-
other instruction the jury were told that, if there came
into his possession and care one of the several sums of
money testified about in the case and by virtue of his of-
fice, and that he feloniously and fraudulently converted
or appropriated the same to his own use with intent to
deprive the county of the money, he was guilty. In an-
other instruction the jury were told that it was not nec-
essary to make out a case of embezzlement to prove that
the defendant converted the exact amount of money al
leged, but that, if they believed from the evidence, be-
yond a reasonable doubt, that, while serving as county
superintendent of education for Sunflower county, the

defendant unlawfully, willfully, and feloniously embezzled the amount set out in the indictment, or any amount in excess of twenty-five dollars, he was guilty. The state also instructed the jury that, if there came into his possession and care various amounts of money, totalling twenty-five dollars, or more than twenty-five dollars, and that he unlawfully, etc., appropriated any one or all of the sums totalling more than twenty-five dollars to his own use, etc., he was guilty.

The proof showed that the defendant was county superintendent of education from 1917 to 1923. Some of the items came into his possession more than two years prior to the finding of the indictment. The accounts ran back to the year 1918, and nowhere were the jury limited in the time that they might find an embezzlement. In other words, the theory of the state was that, with the charge of converting the funds on the 8th day of September, 1924, the state could go back any length of time while the defendant was in office, and that it could select hundreds of different items which came into his possession and leave the jury to find any one of them, leaving the jury in the attitude that one juror could convict for one item, another juror could convict for another item, thus making it possible for each juror to believe that defendant embezzled a different item from what the other jurors might believe, bringing the case squarely within the evils so vividly portrayed by this court in *King* v. *State,* 66 Miss. 502, 6 So. 188.

It was, of course, highly improper for the defendant to handle the funds in the manner that he did, and I do not think he was entitled to the peremptory instruction requested, although his testimony that all of the funds went to public purposes was not specifically contradicted. Having mingled those funds with his own, and being unable to give a detailed and specific account of the disposition of all of them, it was a question for the jury. Every public officer handling public funds ought to comply with the legal regulations pertaining to his office. At no place in the legal fields is it more dangerous to be wiser than

the law than when dealing with public funds by virtue of office, but, in the prosecution for such offenses as may result from failure to comply with the law, the defendant should be given specific information as to what particular moneys came into his possession, and from what sources, and to what fund, they should be applied. The indictment in this case, in my opinion, is utterly insufficient to furnish this information.